**Philip M. ALCARAZ, Petitioner,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 1996.

Decided July 11, 1996.

---

# 1235

Dianne M. Sheppard, for Petitioner.

Peter Lassi, for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

Philip M. Alcaraz (Alcaraz) petitions for review of that portion of a final order of the Pennsylvania Labor Relations Board (PLRB) which concluded that the Borough of Palo Alto (borough) did not engage in unfair labor practices contrary to section 6(1)(e) of the Pennsylvania Labor Relations Act (PLRA),[1] as read in *pari materia* with the Collective Bargaining by Policemen or Firemen Act (Act 111),[2] by refusing to collectively bargain and proceed to binding interest arbitration with Alcaraz's designated bargaining representative.

Alcaraz, the only police officer in the borough's employ, served as the borough's chief of police from 1982 until his dismissal on March 22, 1993. Prior to 1992, Alcaraz negotiated his employment contracts directly with the borough, with the last negotiated contract effective from January 1991 to January 1993. Beginning in May 1992, at Alcaraz's request, the Fraternal Order of Police, Schuylkill Carbon Lodge No. 13(FOP), exchanged letters with the borough indicating its intent to represent and engage in collective bargaining on behalf of Alcaraz for the purpose of arriving at a new employment contract. In responding letters, the borough stated that it had no duty to collectively bargain with the representative of a one-person unit. Faced with this impasse, the FOP named its arbitrator and requested that the borough do likewise so that the parties could proceed to binding interest arbitration pursuant to section 4(a) of Act 111. The borough refused, again asserting that it did not recognize the FOP as Alcaraz's representative and that it had no duty to proceed to

1. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. § 211.6(1)(e), which provides:

(1) It shall be an unfair labor practice for an employer—

\* \* \*

(e) To refuse to bargain *collectively* with the representatives of his *employes,* subject to the provisions of section seven (a) of the act. (Emphasis added).

2. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1—217.10. Section 1 of Act 111, 43 P.S. § 217.1, provides that policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, and shall have the right to settle their grievances or disputes in accordance with the terms of Act 111. In that regard, section 4(a) of Act 111, 43 P.S. § 217.4(a), provides that if the collective bargaining process reaches an impasse in a dispute between a public employer and its policemen or firemen employees, either party to the dispute may request the appointment of a board of arbitration. Section 7 of Act 111, 43 P.S. § 217.7, provides that the determination of the board of arbitration shall be final as to the issues in dispute and binding on the parties involved.

interest arbitration. However, the borough did offer to meet with Alcaraz individually to discuss a new contract.

By letter dated December 31, 1992, the borough informed Alcaraz that his employment contract with the borough would soon expire, and that Alcaraz needed to negotiate a new contract with the borough if he desired to remain employed. The borough also notified Alcaraz that if it did not hear from him, the borough would consider other alternatives, including hiring a replacement. Thereafter, on January 7, 1993, Alcaraz instituted an action in mandamus in the Court of Common Pleas of Schuylkill County (trial court), seeking to compel the borough to proceed to interest arbitration pursuant to Act 111.

Several days later, on January 11, 1993, Borough Council (Council) held a meeting at which Alcaraz addressed Council regarding his employment contract and the mandamus action he had initiated. Following a private session, Council reconvened the meeting and announced that it would retain Alcaraz on a day-to-day basis until a replacement could be found for him. Shortly thereafter, the borough advertised for a new Chief of Police in the local newspaper.

On March 22, 1993, the borough mayor informed Alcaraz that he was suspended without pay pending discharge by Council based on conduct alleged against Alcaraz more than a year and a half earlier.[3] Alcaraz denied the charges and requested a public hearing before Council, which was held on April 7, 1993. After this hearing, Council sustained the charges against Alcaraz and terminated his employment.

On April 27, 1993, following his dismissal, Alcaraz filed a charge of unfair labor practice against the borough with the PLRB, alleging that the disciplinary charges filed against him by Council were merely a pretext, and that, in reality, the borough dismissed him in retaliation for his attempts to negotiate a collective bargaining agreement and assert his arbitration rights under Act 111, in violation of both Act 111 and sections 6(1)(a), (c) and (e) of the PLRA, 43 P.S. § 211.6(1)(a),(c) and (e).[4]

Thereafter, the PLRB issued a complaint and notice of hearing against the borough, to which the borough responded. On September 2, 1993, a hearing was held before a hearing examiner on the charge of unfair labor practices, following which the hearing examiner issued a proposed decision and order holding that the borough had committed unfair labor practices in violation of Act 111 and sections 6(1)(a) and (c) of the PLRA by discharging Alcaraz from his post as borough police chief. However, because Alcaraz constituted a one-employee unit, the hearing examiner found no cause of action with regard to PLRA section 6(1)(e). The proposed order directed the borough to cease and desist from discriminating in regard to hire and tenure of employment and to offer Alcaraz unconditional reinstatement to his former position, making him whole for any lost benefits and wages. The borough filed exceptions to this proposed decision and order, to which Alcaraz responded.

In the meantime, the borough had filed preliminary objections to Alcaraz's complaint in mandamus asserting, among other things, that the trial court lacked subject matter jurisdiction and that Alcaraz had failed to state a cause of action. On May 26, 1993, the trial court dismissed all of the Borough's preliminary objections in an opinion holding that a single police officer has the right under Act 111 to compel his employer to proceed to binding interest arbitration and

---

3. In October 1991, Sharon Holder filed a Protection from Abuse Petition (PFA) against Alcaraz alleging various acts of abuse. Reproduced Record (R. 21a–31a.) As a result, the parties agreed to refrain from contact with each other, but neither party made any admission of misconduct. (R. at 19a–20a.) Alcaraz informed at least three members of Council about the PFA proceedings; however, the borough took no action against Alcaraz at that time.

4. Section (6)(1)(a) of the PLRA, 43 P.S. § 211.6(1)(a), makes it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of the rights guaranteed by the PLRA. Section 6(1)(c) of the PLRA, 43 P.S. § 211.6(1)(c), provides that it shall be an unfair labor practice for an employer, by discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization.

that, where there was no question of representation, mandamus was the appropriate remedy to enforce this right.

The borough appealed to this court[5] and, in a memorandum opinion filed on February 3, 1994, we relied on *Nazareth v. Pennsylvania Labor Relations Board*, 534 Pa. 11, 626 A.2d 493 (1993) to vacate the trial court order on grounds that the trial court lacked subject matter jurisdiction, because issues involving the composition of a bargaining unit and the ability to represent the employees in question are within the *exclusive jurisdiction* of the PLRB.[6] (Emphasis in memorandum opinion.) Accordingly, we ordered the case transferred to the PLRB. The Supreme Court granted Alcaraz's petition for allowance of appeal from this determination;[7] however, following briefing and oral argument, the court dismissed the appeal as improvidently granted and reinstated this court's memorandum opinion and order transferring the case to the PLRB.

On March 21, 1995, the PLRB issued its final order, including a determination of the issue which began as the action in mandamus. In that regard, the PLRB noted that it consistently has held that because it takes more than one employee to *collectively* bargain, an employer has no duty to collectively bargain with a unit permanently consisting of a single police officer. *See, e.g., Roaring Brook Township*, 20 Pa. Pub. Employee R. 20077 (Final Order 1989); *Lincoln Universi-*

*ty*, 11 Pa. Pub. Employee R. 11048 (1980). Moreover, the PLRB reasoned that because interest arbitration under Act 111 is an extension of the *collective* bargaining process, and is aimed at resolving *collective* bargaining impasses, an employer does not commit an unfair labor practice by refusing to proceed to interest arbitration with such a single-person unit. *Roaring Brook Township*. The PLRB then noted that "[a]bsent some direction from the appellate courts expressing disapproval of these decisions by the [PLRB], the current state of the law requires the [PLRB] to reject Alcaraz's argument that the Borough had a duty to engage in collective bargaining and/or interest arbitration with his designated representative." (PLRB op. at 4; R. at 586a.)

On April 19, 1995, Alcaraz petitioned this court for review of the PLRB's final order[8] with respect to that portion of the decision addressing the bargaining rights of single-officer police departments under section 6(1)(e) of the PLRA.[9] Alcaraz asks us to finally determine whether an employee who is employed in a one-person police or fire department has the right to "collectively" bargain over the terms and conditions of his or her employment and, if necessary, to proceed to binding interest arbitration under Act 111, thereby creating a corresponding duty in the employer to bargain and submit bargaining impasses to arbitration. Thus, this case presents a novel issue for our review because, although this court is aware

---

**5.** At the borough's request, the trial court amended its dismissal order pursuant to 42 Pa.C.S. § 702(b) by adding the necessary language to allow for an immediate interlocutory appeal, permission for which was granted by this court on August 2, 1993.

**6.** In a footnote to our memorandum opinion, citing *Lincoln University*, 11 Pa. Pub. Employee R. 11048 (1980), we noted that the PLRB previously had held that an employer has no duty to bargain when the bargaining unit is comprised of only one employee.

**7.** The PLRB sought permission to participate in support of Alcaraz's petition for allowance of appeal. In response, the borough filed briefs in opposition to Alcaraz's petition for allowance of appeal as well as to the PLRB's application to participate in support of that petition. The court denied the PLRB's application, but granted Alcaraz's petition.

**8.** Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed, and findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *City of Bethlehem v. Pennsylvania Labor Relations Board*, 153 Pa.Cmwlth. 544, 621 A.2d 1184 (1993).

**9.** On the same day, the borough also filed a petition for review of the PLRB's final order. We consolidated the appeals on May 1, 1995. Alcaraz filed a notice of intervention in the appeal filed by the borough and the borough filed a notice of intervention in the appeal filed by Alcaraz. However, the borough has since discontinued its petition for review and has withdrawn its intervention in this matter. Therefore, only the issues raised in Alcaraz's petition for review remain for our consideration.

that the PLRB does not recognize an employer's duty to bargain with one-employee units, until now, we have not been asked to consider the propriety of the PLRB's position.

Section 1 of Act 111 provides:

*Policemen* or *firemen* employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain *collectively* with *their* public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1 (emphasis added).[10]

Alcaraz concedes that the PLRB consistently has relied on this language to hold that an Act 111 employer is not required to bargain with a unit comprised of only one employee or proceed to arbitration with single-member departments. However, Alcaraz correctly points out that the PLRB also has held that, while it may lack jurisdiction to enforce the "collective" bargaining rights of single-officer police departments, a policeman in such a department nevertheless remains an employee under Act 111, entitled to the rights afforded by that legislation and the PLRA. *Roaring Brook Township; Dushore Borough,* 19 Pa. Public Employee R. 19108 (1988).[11] With this in mind, Alcaraz urges us to adopt the position that, under Act 111, every police officer, even those in single-person departments, may engage in the same bargaining procedures as officers in departments with more than one employee.[12]

■ In response, the PLRB argues that Act 111, the PLRA, and the Public Employe Relations Act of 1970 (PERA)[13] all grant "collective" bargaining rights to employees. The PLRB contends that it obviously takes more than one employee to "collectively" bargain. Therefore, the PLRB argues, that it has correctly held in the past that an employer has no duty to bargain collectively with employees, including the submission of collective bargaining impasses to interest ar-

---

10. Throughout this opinion, we use various terms to describe a department which employs only one policeman. In doing so, we use the various descriptive terms synonymously. In addition, we point out that, for the sake of clarity, we use the terms policemen and firemen as they appear in Act 111, rather than the preferred gender neutral terms police officers and fire fighters.

11. We note that the PLRB pointed out in its decision in this matter that the hearing examiner cited *Dushore Borough* for the proposition that it is not appropriate to certify a unit of a single employee for purposes of collective bargaining, but such employee is nevertheless protected against discrimination for attempting to assert rights under the PLRA and Act 111. The *Dushore Borough* decision reasoned that the affected individual was an employee for purposes of the PLRA and a policeman for the purposes of Act 111 and thus was entitled to engage in the activities protected by those statutes and was protected from discrimination for engaging in such activities.

12. Alcaraz also relies on the principles of statutory construction to show that the term "policemen" in Act 111 must also include an officer in a single-person department. Noting that the goal of statutory interpretation is to effectuate the intent of the legislature, 1 Pa.C.S. § 1921(a), he reasons that to hold that one-person departments lack the bargaining and arbitration rights afforded multi-person departments, violates the spirit of Act 111 and, thus, ignores the legislative purpose behind its enactment. Moreover, because the Statutory Construction Act mandates that the singular shall include the plural, and the plural, the singular, 1 Pa.C.S. § 1902, Alcaraz asserts that single-person departments must be included in Act 111's protections. Alcaraz also claims that limiting application of Act 111 to multi-person departments would violate the principles of statutory construction in that it would lead to an absurd and unreasonable result, 1 Pa.C.S. § 1922(1). In this regard, Alcaraz contends that if one-person departments are denied the right to proceed to binding arbitration to settle disputes, then it must follow that such individuals would be entitled to strike, leaving municipalities with no police protection whatsoever. Finally, Alcaraz asserts that statutory construction requires that all provisions of the statute be liberally construed to effectuate and promote justice, 1 Pa. C.S. § 1928(c), which would require that all police officers, even those in single-person departments, be covered under Act 111.

13. Act of July 23, 1970, P.L. 563, 43 P.S. §§ 1101.101—1101.2301.

bitration, when the bargaining unit permanently consists of a single employee. *See Roaring Brook Township; Sugarloaf Township*, 17 Pa. Pub. Employee R. 17179 (final Order 1986). We agree.

Although the terms "collective" and "collective bargaining" are not specifically defined in the PLRA or Act 111, the PLRB is correct in its assertion that it takes more than one employee to *collectively* bargain. Webster's Third New International Dictionary 444 (1986) defines "collective" as "indicating a number of persons or things considered as constituting one group or aggregate." Webster's defines "collective bargaining" as "negotiation for the settlement of the terms of a collective agreement between an employer or group of employers on one side and a union or number of unions on the other; *broadly:* any union-management negotiation." Webster's Third New International Dictionary 445 (1986).

■ Since it takes more than one person or employee to bargain collectively, it follows that an employer has no duty to collectively bargain with a unit permanently consisting of a single police officer. Moreover, we agree with the PLRB that because interest arbitration under Act 111 is an extension of the *collective* bargaining process and is aimed at resolving *collective* bargaining impasses, an employer does not commit an unfair labor practice by refusing to proceed to interest arbitration with such a single-person unit. Our Supreme Court's decision in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board*, 470 Pa. 550, 369 A.2d 259 (1977), clearly supports this determination.

In *Philadelphia Fire Officers*, our Supreme Court was called upon to decide whether the PLRB had the statutory jurisdiction to conduct an election among policemen or firemen whose collective bargaining with the public employers is governed by Act 111, since Act 111 makes no express provision for the conduct of representation elections by the PLRB. In resolving this issue, our Supreme Court reviewed the legislative background of the Pennsylvania Labor Relations Act (PLRA), Act 111, and the PERA also commonly referred to as Act 195.

Our Supreme Court pointed out that the PLRA created the PLRB and charged it with the specialized tasks of determining bargaining representatives and conducting hearings on unfair labor practice complaints, but excludes public employers from its definition of employers covered by the PLRA. *Philadelphia Fire Officers*, 470 Pa. at 553, 369 A.2d at 260. Therefore, when faced with strikes by police and fire personnel in the late 1960s, the General Assembly enacted Act 111. *Id.* Act 111 provides generally for collective bargaining between policemen and firemen and their public employers and, in the event of a bargaining impasse, for compulsory and binding arbitration with no right to strike. *Id.* Two years later, the General Assembly enacted Act 195 but specifically excluded from the definition of employees covered by Act 195 those employees covered under Act 111. *Id.* at 554, 369 A.2d at 261.

Our Supreme Court in *Philadelphia Fire Officers* recognized that of these three statutes, the PLRA and Act 195 provide detailed and explicit procedures for the determination of collective bargaining representatives and the prevention of unfair labor practices, while Act 111 provides for collective bargaining generally but is lacking altogether in the specific provisions normally found in a collective bargaining statute. *Id.* at 554–55, 369 A.2d at 261. Accordingly, to provide employees governed by Act 111 with a procedure for the determination of collective bargaining representatives and the prevention of unfair labor practices, our Supreme Court held that the PLRA and Act 111, which are both collective bargaining statutes, are *in pari materia* and that the two acts should be construed together as a single statute. *Id.* at 555, 369 A.2d at 261. Our Supreme Court stated that "[w]e believe that when the Legislature spoke in Act No. 111 of 'labor organizations or other representatives designated by 50 percent or more of such policemen and firemen,' it necessarily meant a labor organization designated in accordance with the provisions and procedures already established by statute and administered by the [PLRB]." *Id.* at 556, 369 A.2d at 261.

Our Supreme Court reaffirmed its holding in *Philadelphia Fire Officers* in *Borough of*

*Nazareth v. Pennsylvania Labor Relations Board,* 534 Pa. 11, 15, 626 A.2d 493, 495 (1993), stating that "it was necessary to read Act 111 *in pari materia* with the PLRA, not only to provide a mechanism for resolving representation questions, but also to protect and foster the process of collective bargaining between parties."

As recognized by our Supreme Court in both *Philadelphia Fire Officers* and *Borough of Nazareth,* the PLRA requires employers to bargain with *collective* bargaining units. A refusal to bargain *collectively* with the representatives of its employees constitutes an unfair labor practice for an employer under section 6(1)(e) of the PLRA, 43 P.S. § 211.6(1)(e). Further, pursuant to *Philadelphia Fire Officers* and *Borough of Nazareth,* the PLRB has jurisdiction over an unfair labor practice charge regarding an employer's refusal to bargain. However, based on the common meaning of the terms "collective" and "collective bargaining" and reading the provisions of Act 111 and the PLRA in *pari materia,* the employee or employees filing the unfair labor practice charge must first have *collective* bargaining rights.

The aim and purpose of both the PLRA and Act 111 is the promotion, advancement, and protection of collective bargaining and not of individual bargaining. Act 111 has the additional purpose of ensuring the safety and welfare of the public by keeping essential police and fire personnel on the job. Despite this additional aim of Act 111, there is no reference in Act 111, or the PLRA, to individual bargaining. Moreover, an individual's assertion of a right to bargain clearly does not fall within the plain statutory language of Act 111 that "[p]olicemen and firemen ... shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers...". Section 1 of Act 111, 43 P.S. § 217.1.

Therefore, the PLRB has correctly held that a collective bargaining unit which consists of a single person is not an appropriate bargaining unit. Accordingly, a public employer does not have a duty pursuant to Act

111 to collectively bargain with a unit permanently consisting of a single police officer.

The portion of the final order of the PLRB which concludes that the Borough did not engage in unfair labor practices contrary to section 6(1)(e) of the PLRA by refusing to collectively bargain and proceed to interest arbitration with Alcaraz's designated bargaining representative is affirmed.

### ORDER

NOW, this 11th day of July, 1996, we affirm that portion of the order of the Pennsylvania Labor Relations Board, dated March 21, 1995, concluding that the Borough of Palo Alto had no duty under Act 111 to bargain with a single-member police department.

FRIEDMAN, Judge, dissenting opinion.

I respectfully dissent.

Section 1 of Act 111 provides:

*Policemen* or *firemen* employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain *collectively* with *their* public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1 (emphasis added).

Unlike the majority, I agree with Alcaraz that this statutory language provides no reason to draw a distinction between a one-person force and a force with more than one person with regard to Act 111. In fact, I believe that Act 111 grants the absolute right to each and every policeman and fireman, whether in single or multi-person departments, to bargain over the terms and conditions of his or her employment and to invoke binding arbitration to resolve bargaining disputes in exchange for the loss of the right to strike. In *Philadelphia Fire Officers Associ-*

ation v. Pennsylvania Labor Relations Board, 470 Pa. 550, 369 A.2d 259 (1977), our Supreme Court discussed the legislative background behind Act 111, stating:

In the late 1960's, legislative policy with respect to collective bargaining in the public sector began to change. In 1968, as is well known, the General Assembly of Pennsylvania, faced with a recent history of strikes by police and fire personnel which the Act of 1947 was ineffective to prevent, enacted what is today commonly known as 'Act No. 111.' That Act provides generally for collective bargaining between policemen and firemen and their public employers and, in the event of a bargaining impasse, for compulsory and binding arbitration with *no right to strike*.

*Philadelphia Fire Officers* at 553–54, 369 A.2d at 260 (emphasis added). This court has also recognized, with regard to employees covered by Act 111, that "as a *quid pro quo* for eliminating the right to strike, the only method allowable for the settling of collective bargaining impasse disputes and grievances is arbitration." *AFSCME v. Borough of State College*, 127 Pa.Cmwlth. 71, 560 A.2d 928, 930 (1989), *overruled on other grounds by Pottstown Police Officers' Association v. Pennsylvania Labor Relations Board*, 160 Pa.Cmwlth. 87, 634 A.2d 711 (1993).

In recognizing that the purpose behind the enactment of Act 111 is to ensure the safety and welfare of the public by keeping essential police and fire personnel on the job, I am forced to conclude that the legislature intended to extend to *all* policemen and firemen the absolute right to bargain and proceed to binding arbitration, if necessary, in exchange for the loss of the right to strike. I see no indication, either express or implied, that the legislature intended to exclude any member of the group of policemen and firemen from the no-strike provision; conversely then, I must assume that no member of the group can be prevented from asserting his or her Act 111 rights.

In *Mosky v. Jenner Township*, 50 Somerset L.J. 79 (C.P.Pa.1991),[1] the court dealt with the precise issue presented here and concluded that a policeman in a one-officer department can assert Act 111 rights, including the right to "collectively bargain" and compel his employer to binding arbitration, in exchange for the loss of the right to strike. The court in *Mosky* stated:

Even though [Act 111] provides that *policemen* or *firemen*, in the plural, shall have the right to bargain *collectively* with *their* public employers, we interpret it to also include each individual member of said group.... '[I]t is well established, by statute and by judicial decision, that legislative terms which are singular in form may apply to multiple subjects or objects. Those which are plural in form may apply to single subjects or objects if that is the intended or reasonably understood meaning and effect.' [Citations omitted.] Since it appears to this Court that the legislature intended for all policemen and firemen to be covered by [Act 111], we too will give the intended and reasonable meaning [and] effect that is required. Being that policemen necessarily includes police officers (policemen), it is reasonable and proper to include the one policeman in the grouping of policemen.

. . . .

If we construe [Act 111] not to include the single policeman, where does it leave him with respect to his right to strike.

If one of the purposes of [Act 111] was to cure the situation that existed prior to its enactment, how can we justify eliminating the one-man police force protection under this act.

There are a great many one- and two-men forces in this Commonwealth who do a tremendous job of protecting the citizens and their property, but because of economic conditions many municipalities are cutting back policemen and to hold that a one-man police force is not covered by this act would only encourage them to cut further, all to the great detriment of the public. We are not convinced that the Legislature

---

1. Although I recognize that the *Mosky* decision is not binding precedent for this court, I agree with and, therefore, would adopt its reasoning with regard to this matter.

had this in mind when Act No. 111 was enacted.

*Id.* at 81–82, 85 (emphasis in original).

In considering the positions of both parties, I would hold that an Act 111 employee cannot be denied rights under that statute simply because he or she is the only person in the department. Rather, I believe that the rights of individual policemen or firemen under Act 111 must be contingent solely on their status as a policemen or firemen within the meaning of the statute; this designation, in turn, must be based on the duties they perform, not on whether they perform those duties as part of a group. Because Alcaraz is a policeman within the meaning of Act 111, (PLRB's Conclusion of Law, No. 2), albeit in a single-person department, I would conclude that he has the statutory right to bargain and invoke the binding arbitration process in the event of a bargaining impasse.

Having made this determination,[2] I would also agree with Alcaraz that he must be afforded a forum in which to enforce his Act 111 right to compel the borough to arbitration, either by filing an unfair labor practice petition with the PLRB or through a court action in mandamus. Currently, however, neither forum appears to accept jurisdiction to provide Alcaraz with a remedy: (1) the PLRB has held that its jurisdiction is limited by the PLRA to matters involving *collective* bargaining, thus preventing it from enforcing a one-person police department's right to bargain and/or arbitrate; and (2) in its memorandum opinion, this court, with the apparent approval of the Supreme Court, relied on *Nazareth* to hold that the trial court was without jurisdiction to enforce Alcaraz's Act 111 rights through an action in mandamus.

As for Alcaraz himself, he recognizes that arguments can be made to support jurisdiction in either forum and would accept either forum as proper so long as he is afforded his Act 111 rights. Alcaraz notes that where, as

here, there is no question of certification or representation, courts have held that mandamus is the proper remedy to enforce the Act 111 bargaining/arbitration obligation. *Hartshorn v. County of Allegheny*, 460 Pa. 560, 333 A.2d 914 (1975); *Board of Commissioners of Montgomery County v. Lukens*, 51 Pa. Cmwlth. 576, 415 A.2d 118 (1980), *aff'd*, 494 Pa. 64, 428 A.2d 972 (1981). Alternatively, Alcaraz points out that the PLRB already has admitted that an officer in a single-person department retains his Act 111 rights;[3] therefore, Alcaraz suggests that, by recognizing the uniqueness of Act 111, the PLRB could broaden its view of the word "collective" and assert jurisdiction over one-person bargaining units to enforce the bargaining obligation for Act 111 cases only.

In *Nazareth*, our Supreme Court recognized the PLRB's expertise in the area of public employee labor relations and determined that the PLRB was in the best position to resolve *all* unfair labor practice cases. Accordingly, the Court specifically held that a "[b]orough's failure to proceed to interest arbitration under Act 111 is an unfair labor practice over which the PLRB has jurisdiction." *Id.* at 16–17, 626 A.2d at 496. Moreover, the Court held that "under the language of Section 4 of Act 111, both employee and employer have the right to file an unfair labor practice petition with the PLRB to compel the other party to proceed to interest arbitration." *Id.* at 17, 626 A.2d at 496. Based on my belief that a policeman or fireman employed in a one-person department has Act 111 rights coextensive with those provided to policemen and firemen in multi-person units, including the right to compel arbitration, I would also hold, under *Nazareth*, that it is an unfair labor practice for a borough to refuse to proceed to interest arbitration with a one-person unit, and that, pursuant to section 4 of Act 111, both an employer or an employee of such a unit can file an

---

2. As a related issue, assuming that we concluded that this right/duty exists, Alcaraz asked that we determine if enforcement of that right should be through the PLRB by filing a charge of unfair labor practice or in the courts via a mandamus action. Because the majority concluded that Alcaraz had no Act 111 rights to assert, it did not reach this issue.

3. Interestingly, I note that the PLRB does not oppose Alcaraz's right to pursue Act 111 rights in another forum, where those rights "are not part and parcel of the collective bargaining process." (PLRB brief at 12.) However, because Act 111 is the *Collective* Bargaining by Policemen and Firemen Act, I have no idea what rights this might include.

unfair labor practice petition with the PLRB to compel the other party to proceed to interest arbitration.

Based on this reasoning, I would reverse that portion of the PLRB's order concluding that the borough had no duty under Act 111 to bargain with a single-member police department and remand to the PLRB for further proceedings.

SMITH, J., joins in this dissent.