716 A.2d 1238

**Philip M. ALCARAZ, Appellant,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 9, 1997.

Decided Aug. 21, 1998.

Reargument Denied Nov. 30, 1998.

606

Diane M. Sheppard, Philadelphia, for Philip M. Alcaraz.

James Crawford, Harrisburg, for PA Labor Relations Bd.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

NEWMAN, Justice.

This case presents the issue of whether the Borough of Palo Alto (the Borough) has the duty to engage in collective bargaining with a single-member police department pursuant to the provisions of the Collective Bargaining for Policemen and Firemen's Act, Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. § 217.1, *et seq.* (Act 111).[1]

### FACTS AND PROCEDURAL HISTORY

Philip M. Alcaraz (Alcaraz) began working full-time as the Chief of Police for the Borough in 1982. He was the only police officer in the employ of the Borough and remained in this position until he was discharged on March 22, 1993. Alcaraz routinely negotiated his employment contracts directly with the Borough. The last independently negotiated contract expired in January of 1993.

Beginning in May of 1992, at Alcaraz's request, the Fraternal Order of Police, Schuylkill Carbon Lodge No. 13(FOP)

---

1. This Act was saved from repeal by the Act of July 23, 1970, P.L. 563, No. 195, *as amended*, 43 P.S. §§ 1101.101, et seq.

began corresponding with the Borough as Alcaraz's represen-
tative in an attempt to initiate contract negotiations. The
Borough refused to acknowledge the FOP as Alcaraz's repre-
sentative and indicated that it had no duty to bargain collec-
tively with the representative of a one-person bargaining unit.
On September 10, 1992, the FOP declared an impasse and
named its arbitrator and requested the Borough to do the
same in order to proceed to binding interest arbitration in
accordance with Section 4 of Act 111, 43 P.S. § 217.4. The
Borough again refused, contending that it did not recognize
the FOP as Alcaraz's representative and claiming it did not
have a duty to proceed to interest arbitration. The Borough
offered, however, to negotiate with Alcaraz directly.

The Borough Solicitor sent a letter dated December 31,
1992, to Alcaraz's counsel advising that Alcaraz's employment
contract would soon expire and that he needed to negotiate a
new contract if he wished to remain employed with the
Borough. The letter also said that the Borough would con-
template replacing Alcaraz if he did not respond. Alcaraz
initiated a mandamus action on January 7, 1993 in the Court
of Common Pleas of Schuylkill County (Court of Common
Pleas) to compel the Borough to engage in interest arbitration.

The Borough Council (Council) held a meeting on January
11, 1993, at which Alcaraz had the opportunity to address
Council concerning his employment contract negotiations and
the mandamus action he commenced several days earlier.
Council subsequently decided to retain Alcaraz on a per diem
basis until they could find a replacement. An advertisement
for a replacement did not appear in the local paper, however,
until March 5, 1993.

On March 22, 1993, the Borough Mayor notified Alcaraz
that Council suspended him without pay pending discharge.
The discharge, according to the Mayor, was based on conduct
alleged against Alcaraz in a Protection From Abuse petition
(PFA) filed in October of 1991. The Borough conducted a
hearing on April 7, 1993 at Alcaraz's request, in order for him
to address the charges. At the hearing, Alcaraz explained
that in October of 1991 his former fiancée had instituted

proceedings against him to obtain a PFA, but that the proceedings ended with an agreement by both parties to refrain from further contact with one another, without either party admitting any acts of misconduct.[2] Council nevertheless sustained the charges against Alcaraz and terminated his employment.

Concerning the mandamus action, the Borough filed preliminary objections, which the Court of Common Pleas dismissed on May 26, 1993. The court amended its Order to permit the Borough to file an immediate appeal. The Borough appealed to the Commonwealth Court. In a Memorandum Opinion, the Commonwealth Court vacated the Order of the Court of Common Pleas, holding that the court lacked jurisdiction over the matter, and transferring the case to the PLRB. Alcaraz filed a Petition for Allowance of Appeal with this Court, which we granted. However, after briefing and argument, we dismissed the appeal on February 14, 1995, as having been improvidently granted.

In addition to the mandamus action, on April 26, 1993, Alcaraz filed an unfair labor practice charge against the Borough with the Pennsylvania Labor Relations Board (PLRB). He alleged that the Borough violated Act 111 and Sections 6(1)(a), (c) and (e) of the Pennsylvania Labor Relations Act (PLRA), 43 P.S. § 211.6(1)(a), (c) and (e).[3] He

**2.** Sharon Holder, Alcaraz's former fiancée and housemate, sought a Protection From Abuse Order against Alcaraz. She alleged various acts of abuse, including making unwanted sexual advances, placing her in the back of a police car and scaring her by banging against the plexiglass divider with a flashlight, and attempting to strike her on several occasions. Reproduced Record (R.R.) at 25a. Around the time of this incident, Alcaraz had informed at least three members of Council of the PFA proceedings. The Borough did not take any action at that time.

**3.** Section 6(1)(a) provides that it is an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of the rights guaranteed by the PLRA. 43 P.S. § 211.6(1)(a). Section 6(1)(c) prohibits employers from discriminating in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization. 43 P.S. § 211.6(1)(c). It is also an unfair labor practice for an employer to refuse to bargain collectively with its employees' representatives pursuant to section 6(1)(e). 43 P.S. § 211.6(1)(e).

averred that his termination was in retaliation for his mandamus action against the Borough and his assertion of his collective bargaining and arbitration rights. Council's justification for his discharge, he opined, was merely a pretext. The PLRB issued a Complaint and Notice of Hearing against the Borough, and conducted a hearing on September 2, 1993, on the unfair labor practice charges.

· The hearing examiner issued his Proposed Decision and Order on April 5, 1994, wherein he held that the Borough engaged in unfair labor practices in violation of § 6(1)(a) and (c) of the PLRA and in violation of Act 111, but that the Borough did not violate § 6(1)(e) of the PLRA (i.e., the Borough had no duty to bargain with the FOP as Alcaraz's representative). The hearing examiner ordered the Borough to cease and desist from discriminating with respect to hire and tenure, and to offer Alcaraz unconditional reinstatement to his former position without prejudice to any rights or privileges. He further ordered the Borough to make Alcaraz whole for any losses and wages, seniority or other benefits, together with back pay and interest. On April 27, 1994, the Borough filed exceptions to this Proposed Decision and Order. The PLRB agreed with the hearing examiner's Decision and Order and entered a Final Order dated March 21, 1995.

Alcaraz filed a Petition for Review of the Final Order, but only with respect to the bargaining rights issue. The Borough also filed a Petition for Review of the Final Order.[4] The Commonwealth Court consolidated the appeals and a panel heard argument on December 4, 1995. The court subsequently ordered the parties to reargue the case before the court *en banc*. On July 11, 1996, the Commonwealth Court upheld the PLRB's determination that Act 111 does not require a public employer to bargain collectively when the "bargaining unit" permanently consists of a single officer. *Alcaraz v. PLRB*, 678 A.2d 1234 (Pa.Cmwlth.Ct.1996). The court interpreted the term "collective" to require more than one employee.

4. The Borough and Alcaraz reached a settlement agreement regarding the retaliation issue; therefore, the only issue remaining is the bargaining rights issue.

Judge Friedman, joined by Judge Smith, filed a dissenting opinion in which she opined that a one-person police or fire department has the same right as a multi-person department to have a representative bargain on his or her behalf over terms and conditions of employment.

Alcaraz filed a Petition for Allowance of Appeal, which this Court granted to address, first, whether it is an unfair labor practice pursuant to Act 111 and Section 6(1)(e) of the PLRA for an employer to refuse to engage in collective bargaining with the designated representative of a single-officer police department. Secondly, if this is an unfair labor practice, we must next decide who has jurisdiction to prevent such violations of the acts: the courts of common pleas via a mandamus action; or the PLRB through an unfair labor practice charge.[5]

## DISCUSSION

In order to understand fully the purpose and nature of Act 111, it is important to review the history of the labor statutes in Pennsylvania. We begin with the Pennsylvania Labor Relations Act (PLRA), which was enacted in 1937.[6] The PLRA established the Labor Relations Board to address issues of bargaining representation and unfair labor practices. Section 3 of the PLRA excludes from the definition of employers, "the United States or the Commonwealth, or any political subdivision thereof, or any municipal authority ... ." 43 P.S. § 211.3(c). Through the Act of June 30, 1947 (Act of 1947), the Legislature prohibited public employees from striking, terminated the employment of any public employee who struck, and established a grievance procedure. Act of June 30, 1947, P.L. 1183, § 2, *as amended,* 43 P.S. §§ 215.1–215.5, *repealed in part by,* 43 P.S. §§ 1101.101, et seq.[7] *See Phila-*

5. Our review of a PLRB decision is limited to determining whether constitutional rights were violated, errors of law were committed, and findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704.

6. Act of June 1, 1937, P.L. 118, No. 294, 43 P.S. §§ 211.1–211.13.

7. The Legislature created another labor act in 1970 entitled the Public Employe Relations Act (PERA), which governs collective bargaining in the public sector. Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101, et seq. PERA, however, specifically excludes employees

*delphia Fire Officers Association v. PLRB*, 470 Pa. 550, 553, 369 A.2d 259, 260 (1977). From 1947 to 1968, thus, public employees had neither the right to strike, nor a statutory right to collective bargaining. However, in 1968, "the General Assembly of Pennsylvania, faced with a recent history of strikes by police and fire personnel which the Act of 1947 was ineffective to prevent, enacted what is today commonly known as 'Act No. 111.'" *Id.*

Act 111 established a statutory right for policemen and firemen to bargain collectively with their public employers. Section 1 of Act 111 provides as follows:

> Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, Through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

43 P.S. § 217.1. Accordingly, although they do not have the right to strike, firemen and policemen now have the statutory right to collective bargaining.

 Here, the Commonwealth Court concluded that the term "collective" in "collective bargaining" necessarily requires more than one employee. Because neither the PLRA nor Act 111 defines the term collective bargaining, the Commonwealth Court looked to dictionary definitions:

> Webster's Third New International Dictionary 444 (1986) defines "collective" as "indicating a number of persons or things considered as constituting one group or aggregate." Webster's defines "collective bargaining" as "negotiation for

covered by Act 111 from its definition of employees. 43 P.S. § 1101.2002. PERA repealed the Act of 1947 insofar as it applied to those public employees covered by PERA. Section 2002, however, explicitly states that PERA does not repeal Act 111. 43 P.S. § 1101.2002.

the settlement of the terms of a collective agreement between an employer or group of employers on one side and a union or number of unions on the other; *broadly:* any union-management negotiation." Webster's Third New International Dictionary 445 (1986).

*Alcaraz v. PLRB,* 678 A.2d 1234, 1239 (Pa.Cmwlth.1996). From these definitions, the Commonwealth Court concluded, "Since it takes more than one person or employee to bargain collectively, it follows that an employer has no duty to collectively bargain with a unit permanently consisting of a single police officer." *Id.* This conclusion, however, confuses the term collective bargaining with the term bargaining unit. Collective bargaining is simply the negotiation between an employer and the representative union. The bargaining unit, however, refers to the employees on whose behalf the union is negotiating. Act 111 places no minimum requirement on the size of the bargaining unit.

The PLRB has held that a union that is not certified with the PLRB has no standing to bring an unfair labor practice charge. *See, e.g., Roaring Brook Twp. Police Dept. v. Roaring Brook Twp.,* 20 PPER 20038 (1988). Because the Board will not certify a one-person bargaining unit, the PLRB has refused to require an employer to bargain with a unit permanently consisting of one employee. *Id.* Similarly, the National Labor Relations Board (NLRB), which enforces the federal equivalent to the PLRA, the National Labor Relations Act (NLRA), 29 U.S.C.A. §§ 151, et seq., does not certify single-person bargaining units. However, employees in one-person units nevertheless have the right to collective bargaining. *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.,* 746 F.2d 557, 565 (9th Cir.1984) (" 'The [National Labor Relations] Act [ ] does not empower the board to certify where only one employee is involved. *This conclusion does not mean that a single employee may not designate a representative to act for him; he had such a right without the act, and the act in no way limits the right.' " Id.* (emphasis added)) (quoting *Luckenback Steamship Co.,* 2 NLRB 181, 193 (1936)); *National Labor Relations Board v.*

*Transamerican Freight Lines,* 275 F.2d 311, 314 (7th Cir. 1960). However, unlike Act 111, the NLRA does not in any way interfere with, impede, or diminish the right to strike. 29 U.S.C.A. § 163. We again emphasize that firemen and policemen are in a unique situation in that they do not have the right to strike, thus, do not have this mechanism as a bargaining tool.

 Act 111 confers the right to representation to *all* firemen and policemen. There is no minimum limit on the number of employees needed to invoke this right because it is granted to each and every employee as an individual, not as a group of two or more. Similarly, no policeman or fireman has the right to strike. This prohibition does not apply only to departments consisting of more than one policeman or fireman. Thus, officers in departments that permanently employ only one officer are subject to the same restrictions, and likewise should be able to take advantage of the same rights, as officers who are in multiple-officer departments. We agree with Judge Friedman, as she stated in her Dissenting Opinion, that "Act 111 grants the absolute right to each and every policeman and fireman, whether in single or multi-person departments, to bargain over the terms and conditions of his or her employment and to invoke binding arbitration to resolve bargaining disputes in exchange for the loss of the right to strike." *Alcaraz,* 678 A.2d at 1240.

 The only restriction in Act 111 regarding the number of employees is in relation to the selection of a bargaining representative, in which case, at least fifty percent of the employees must agree to the representative. 43 P.S. § 217.1.[8] Since there is no indication, express or implied, that the Legislature intended Act 111 to apply only to multi-person

---

**8.** The PLRB also argues that because Section 1 of Act 111 requires fifty percent of the bargaining unit to designate the bargaining representative, 43 P.S. § 217.1, this necessarily excludes a bargaining unit of one person. This argument is irrational. The fifty percent requirement for selection of a bargaining representative does not prohibit unanimous selection, nor does it indicate that at least two people are required to choose the representative. Rather, all that is essential is at least fifty percent agreement.

departments, a public employer of a single-officer department has a duty to bargain with its employee's designated representative pursuant to Act 111. As such, it is an unfair labor practice for the employer to refuse to recognize the officer's bargaining representative. 43 P.S. § 217.1; 43 P.S. § 211.6(a). We turn next to the issue of who has jurisdiction to enforce this right and compel arbitration.

Although Act 111 provides for collective bargaining by firemen and policemen, it does not set forth any procedures for determining representation or preventing unfair labor practices. Both the PLRA and PERA do, however, provide such procedures. When originally enacted, the PLRA excluded public employers from the duty to bargain collectively. 43 P.S. § 211.3(d). Act 111 repealed all parts of acts that were inconsistent with its grant of collective bargaining rights to firemen and policemen. Section 7 of Act 111. In *Philadelphia Fire Officers, supra,* this Court reasoned as follows:

> by imposing that duty in Act No. 111, the Legislature intended that the exclusion of public employers from the definition of "employer" in the PLRA be Pro tanto repealed. We believe that when the Legislature spoke in Act No. 111 of "labor organizations or other representatives designated by 50 percent or more of such policemen or firemen," it necessarily meant a labor organization designated in accordance with the provisions and procedures already established by statute and administered by the Labor Board.

*Id.,* 470 Pa. at 556, 369 A.2d at 261. We concluded that the PLRA and Act 111 should be read in pari materia insofar as Act 111 is devoid of procedural mechanisms for enforcing and protecting the rights afforded therein. *Id.,* 470 Pa. at 555, 369 A.2d at 261. Accordingly, we will look to the PLRA for guidance concerning who has jurisdiction to enforce Act 111 collective bargaining rights.

The PLRA contains specific provisions that grant the PLRB jurisdiction to prevent unfair labor practices. Section 8 of the PLRA provides, in part:

§ 211.8. Prevention of unfair labor practices

616

(a) The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice listed in section six of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.

(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the board, or any member or designated agent thereof, shall have authority to issue charges in that respect, and containing a notice of hearing before the board, or any member or designated agent thereof, at a place therein fixed, not less than five days after the serving of said complaint. . . .

43 P.S. § 211.8. Section 9 of the PLRA further states:

§ 211.9. Judicial review

(a) The board shall have power to petition the court of common pleas of any county wherein the unfair labor practice in question occurred, or wherein any person charged with the commission of any unfair labor practice resides or transacts business for the enforcement of such order and for appropriate temporary relief or restraining order, . . .

43 P.S. § 211.9(a). Accordingly, the PLRB has the authority and jurisdiction to enforce collective bargaining rights pursuant to Act 111.

### CONCLUSION

■■■ We conclude, therefore, that all fire and police departments have the right to collective bargaining, regardless of the number of employees in the unit. The Borough has a duty pursuant to Act 111 to bargain with a single-officer police department's representative. The PLRB has jurisdiction to enforce this duty. Consequently, we reverse the Commonwealth Court decision and remand to the PLRB for further proceedings.

NIGRO, J., concurs in the result.

ZAPPALA, J., files a dissenting opinion in which FLAHERTY, C.J., joins.

ZAPPALA, Justice, dissenting.

Because I disagree with the majority's conclusion that the Borough of Palo Alto had a duty to engage in collective bargaining with its single-member police department, I dissent.

I agree that an employee in a one person department, like Appellant, is entitled to designate a representative to act for him in negotiating his employment contract. As set forth by the majority, the Ninth Circuit, in discussing the National Labor Relations Act, has noted that the right of a single employee to designate a representative to act for him is in no way limited since this right existed prior to the NLRA's enactment. *Operating Engineers Pension Trust v. Beck Engineering & Surveying Co.*, 746 F.2d 557, 565 (9th Cir.1984). The right to designate a representative to negotiate a contract, however, is not the same as the right to collective bargaining.

Act 111 grants employees "the right to bargain collectively with their public employers." Act of June 24, 1968, P.L. 237, No. 111, *as amended,* 43 P.S. § 217.1. While the term "collective bargaining" is not defined in Act 111, as held by the Commonwealth Court below, the terms "collective" and "collective bargaining," by definition, require more than one person in order for *collective* bargaining to take place. See *Alcaraz v. Pennsylvania Labor Relations Board,* 678 A.2d 1234, 1239 (Pa.Cmwlth.1996) (Webster's Third New International Dictionary 444 (1986) defines "collective" as indicating a number of persons or things considered as constituting one group or aggregate. Webster's defines "collective bargaining" as "negotiation for the settlement of the terms of a collective agreement between an employer or group of employers on one side and a union or number of unions on the other; broadly: any union-management negotiation." Webster's Third New Dictionary 445 (1986)).

Moreover, this Court, in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), and *Borough of Nazareth v. Pennsylvania Labor Relations Board,* 534 Pa. 11, 626 A.2d 493 (1993), has recognized that Act 111 and the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.1 *et seq.,* are both collective bargaining statutes that are to be read *in pari materia.* The PLRA requires employers to bargain with collective bargaining units. Nothing in either Act 111 or the PLRA reference a right to individual bargaining. To the contrary, Section 1 of Act 111, 43 P.S. § 217.1, provides that "policemen and firemen...shall, through labor organizations or other representatives *designated by fifty percent or more of such policemen or firemen,* have the right to bargain collectively with their public employers...." (Emphasis added). Accordingly, the Pennsylvania Labor Relations Board has consistently, and, in my view, correctly concluded that a unit which consists of a single person is not an appropriate collective bargaining unit. Accordingly, the PLRB has not found it to be an unfair labor practice for an employer to refuse to bargain collectively with a unit permanently consisting of a single employee.

As I find the PLRB's reasoning to be proper, I would affirm the Commonwealth Court's decision and order affirming the PLRB in this regard.

FLAHERTY, C.J., joins in this dissenting opinion.