369 A.2d 259
PHILADELPHIA FIRE OFFICERS ASSO-
CIATION, Appellant,

v.

PENNSYLVANIA LABOR RELATIONS BOARD.

Supreme Court of Pennsylvania.

Argued Nov. 16, 1976.

Decided Jan. 28, 1977.

Abrahams & Loewenstein, William F. Coyle, Philadelphia, for appellant.

Anthony J. Molloy, Jr., Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Appellant, the Philadelphia Fire Officers Association, filed with the Pennsylvania Labor Relations Board [herein "Labor Board"] a petition in which it sought to have the Labor Board conduct an election to determine a collective bargaining representative in a unit of employees of the Fire Department of the City of

Philadelphia.[1]  The petition admitted that the employees comprising the proposed unit were arguably represented by another labor organization, City Firefighters Association of Philadelphia, Local 22.  The Fire Officers Association represented that it had signature authorization cards from some 412 of the 495 employees it sought to represent.

The Labor Board dismissed the representation petition on the ground that it lacked statutory jurisdiction to conduct an election among policemen or firemen whose collective bargaining with their public employers is governed by the Act of June 24, 1968, P.L. 237, Act No. 111, 43 P.S. §§ 217.1–217.10 (Supp.1976–77), since that statute makes no express provision for the conduct of representation elections by the Labor Board.  The Court of Common Pleas of Philadelphia County affirmed the Board's dismissal,[2] and the Commonwealth Court in its turn likewise affirmed.[3]  We granted allowance of appeal to consider the important issue of labor law which was presented.  We now reverse and remand to the Board for further proceedings consistent with this opinion.

The problem presented is one of statutory interpretation.  The legislative background is necessary to understanding the problem and to its solution:

The Pennsylvania Labor Relations Act ("PLRA"), June 1, 1937, P.L. 1168, No. 294, 43 P.S. §§ 211.1–211.13,

1.  The proposed unit is comprised of 495 employees, consisting of 250 fire lieutenants, 154 fire captains, 49 fire battalion chiefs, 13 fire deputy chiefs, 5 assistant fire chiefs, 12 fire boat pilots, and 12 fire boat engineers.

2.  The Philadelphia Fire Officers Association first appealed to the Commonwealth Court, but that Court, of the view that the question of representation arose under the Public Employe Relations Act of 1970, 43 P.S. § 1101.101 et seq. (Supp.1976–77) ["PERA"], transferred the appeal to the Court of Common Pleas of Philadelphia County.  See PERA § 1502, 43 P.S. § 1101.1502.

3.  *Philadelphia Fire Officers Association v. PLRB*, 18 Pa.Cmwlth. 487, 336 A.2d 477 (1975).

which created the Pennsylvania Labor Relations Board and charged it with the specialized tasks of determining bargaining representatives and conducting hearings on unfair labor practice complaints, excluded from its definition of employers covered by the Act "the United States or the Commonwealth, or any political subdivision thereof, or any municipal authority . . . ." 43 P.S. § 211.3(c). While by virtue of the PLRA and its federal counterpart, the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (1973) collective bargaining became the order of the day in the private labor sector, such bargaining in the public sector was in 1937 and for almost thirty years thereafter considered against public policy. The Act of June 30, 1947, P.L. 1183, formerly 43 P.S. §§ 215.-1–215.5 (now repealed), made strikes by public employees unlawful, provided that any public employee who struck terminated his employment, and established a grievance procedure. The statute, however, did not provide for bargaining on terms, working conditions or hours of employment, nor did it provide for the selection of a bargaining representative to represent a unit of public employees. The Act of 1947, in short, was not a collective bargaining statute.

In the late 1960's, legislative policy with respect to collective bargaining in the public sector began to change. In 1968, as is well known, the General Assembly of Pennsylvania, faced with a recent history of strikes by police and fire personnel which the Act of 1947 was ineffective to prevent, enacted what is today commonly known as "Act No. 111." [4] That Act provides generally for collective bargaining between policemen and firemen and their public employers and, in the event of a bargaining impasse, for compulsory and binding ar-

4. Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1–217.10 (Supp.1976–77).

bitration with no right to strike. Section 1 of Act No. 111 reads:

"Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, *through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen,* have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." 43 P. S. § 217.1 (Supp.1976–77) (emphasis supplied).

Section 11 of Act No. 111 provides that "[a]ll acts or parts of acts inconsistent herewith are hereby repealed." [5]

Two years later, the Legislature enacted a comprehensive statute governing collective bargaining in the public sector, the Public Employe Relations Act of 1970 [6] ("PERA"), sometimes referred to as "Act 195." This Act, however, excluded from the definition of employees covered by the Act "those employes covered under the act of June 24, 1968 [Act No. 111], entitled 'An act specifically authorizing collective bargaining between policemen and firemen and their public employers . . . .' " 43 P.S. § 1101.301(2). A separate provision specifically preserved Act No. 111 from repeal. 43 P.S. § 1101.2002 (Supp.1976–77).

The difficulty pointed up by the case at bar is that of these three statutes (PLRA, Act No. 111, and the PERA), the first and the last provide detailed and ex-

---

5. We cannot find that this repealer provision of Act No. 111 was ever reproduced in Purdon's Pennsylvania Statutes Annotated, 43 P.S. § 217.1 *et seq.*

6. Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101 *et seq.* (Supp.1976–77).

plicit procedures for the determination of collective bargaining representatives and the prevention of unfair labor practices, while the second, Act No. 111, provides for collective bargaining generally but is lacking altogether in the specific provisions normally found in a collective bargaining statute. Policemen and firemen have the right to select a bargaining representative, and through it to bargain collectively, but no procedure is set forth in the statute for the selection of the bargaining representative. The Act states only that "labor organizations or other representatives designated by fifty percent or more of such policemen or firemen" have the right to bargain collectively.

Both courts below were of the view that it is impossible to glean from this trio of statutes any intention of the General Assembly to confer jurisdiction on the Labor Board to conduct a representation election in a unit of policemen or firemen covered by Act No. 111. We disagree.

The PLRA is a statute which deals extensively and in detail with the procedure for selecting bargaining representatives, with the means of preventing coercion of employees in the free exercise of their rights, and with the subject of collective bargaining in general. Act No. 111 deals also with the subject of collective bargaining, but for a limited group of public employees, and contains none of the detailed provisions for selection of a bargaining representative found in the PLRA. We are instructed by the Statutory Construction Act of 1972, 1 Pa.C.S. A. § 1932 (Supp.1976–77), that statutes which are *in pari materia* are to "be construed together, if possible, as one statute." We are of opinion that the PLRA and Act No. 111, which are both, after all, collective bargaining statutes, are *in pari materia* within the meaning of that provision. We believe, also, that it is entirely possible, and indeed salutary, within the limits delineated below, to construe the two acts together as a single statute.

While Section 3(d) of the PLRA, 43 P.S. § 211.3(d), did originally when enacted in 1937 exclude public employers generally from the duty to bargain collectively with employee representatives, Act No. 111, on the other hand, imposed a duty on the part of public employers to bargain with their police and firemen. As noted above, Act No. 111 repealed all "parts of acts inconsistent" therewith. We think it reasonable to conclude that by imposing that duty in Act No. 111, the Legislature intended that the exclusion of public employers from the definition of "employer" in the PLRA be *pro tanto* repealed. We believe that when the Legislature spoke in Act No. 111 of "labor organizations or other representatives designated by 50 percent or more of such policemen or firemen," it necessarily meant a labor organization designated in accordance with the provisions and procedures already established by statute and administered by the Labor Board. Our conclusion is bolstered by the further admonition contained in the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1922 that the General Assembly, in enacting statutes, must be presumed not to intend results which are "absurd, impossible of execution or unreasonable." It is certainly arguable that a statute which provides for collective bargaining but which lacks procedure for designating bargaining agents and for guaranteeing freedom of employee choice in the process is "unreasonable", if not "absurd." [7]

The Commonwealth Court in a footnote cited our opinion in *Hartshorn v. County of Allegheny*, 460 Pa. 560, 333 A.2d 914 (1975), as indicating that questions of representation under Act No. 111 should be resolved in mandamus proceedings in the courts of common pleas. The *Hartshorn* case, however, did not involve a question of which labor organization was the designated representa-

---

7. The Commonwealth Court stated that it was "sympathetic to the difficult position of appellant in its effort to have the appropriateness of its unit determined in some forum . . . ." 18 Pa.Cmwlth. at 490, 336 A.2d at 479.

tive of employees who bargain under Act No. 111; it presented instead a legal question of whether county detectives were "policemen" within the meaning of the Act.

Should we accept the holdings below that representation questions under Act No. 111 be resolved in mandamus proceedings, the courts of common pleas would be obliged then to decide whether they should conduct or supervise a secret representation election or, alternatively, what evidentiary showing by a purported bargaining agent would justify a court in ordering the public employer to bargain with that agent under Act No. 111. The General Assembly has indicated a decided preference for selection of bargaining representatives in a secret election procedure.[8] If, then, we were to agree with the suggestion that representation matters be settled in mandamus proceedings under Act No. 111, it is likely that we would require that the court of common pleas conduct a secret election. Our courts of common pleas, however, do not conduct labor elections, and we can judicially notice that the various labor boards, both federal and state, do conduct secret elections through their staffs whose task it is to journey from workplace to workplace for such purpose. For employees of the courts of common pleas to conduct elections in firehouses and police barracks and stations would, in our view, be a strained, if not an "absurd", interpretation of the legislative intent in enacting Act No. 111.[9]

8. Section 7(c) of the PLRA, 43 P.S. § 211.7(c), provides that a secret election must be had if any party requests it. Section 605 of the PERA, 43 P.S. § 1101.605 (Supp.1976–77), mandates a secret election in all public employment representation cases which are covered by that statute. Similarly in the federal field, Executive Order 11,491, 34 Fed.Reg. 17605 (1969), as amended, like the PERA in Pennsylvania, requires that secret elections be utilized to select bargaining agents in units of federal employees who bargain under the Executive Order. See also *Linden Lumber Div. v. NLRB*, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465 (1974).

9. Were we to utilize mandamus to resolve representation questions arising under Act No. 111 but *not* require a secret election we think the prospects of successful labor relations under Act

We recognize, of course, that employees covered by Act No. 111 are not in any respect covered by the PERA (Act 195) and that Act No. 111 provides its own unique and specific procedure, namely, binding arbitration, as the final resort in the event of a bargaining impasse. 43 P.S. §§ 217.3–217.8 (Supp.1976–77). These provisions of Act No. 111, enacted later than the PLRA, are of course controlling where the situation warrants. *See* Sec. 3 of the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1936.

In concluding, we emphasize that nothing said in this opinion is to be taken as resolving the difficult questions which the Labor Board, believing it had no jurisdiction, declined to decide: viz., (1) whether the proposed bargaining unit in which Philadelphia Fire Officers Association seeks an election is an appropriate one; and (2) whether the right of the Fire Officers Association to have an election conducted is defeated by the claim of City Firefighters Association of Philadelphia, Local 22, that it already represents a unit of firemen which includes the 495 officers whom appellant desires to represent. We decide today only that the Labor Board has jurisdiction under the PLRA of 1937 to conduct a representation election in a unit comprised of firemen and policemen whose collective bargaining with their public employers is governed by Act No. 111.

Reversed and remanded to the Pennsylvania Labor Relations Board for further proceedings consistent with this opinion.

111 could be jeopardized. In its *Linden Lumber* decision, *supra,* n. 8, the Supreme Court indicated that two cases in which the NLRB (and not a nisi prius court) had attempted to resolve a representation question without an election had consumed 4½ and 6½ years, respectively. 419 U.S. at 306, 95 S.Ct. 429. It is conceivable that such delays could result were we to substitute the inexpert court of common pleas for the expert and specialized administrative agency especially created by the Legislature for the purpose, *inter alia,* of conducting bargaining unit elections.