Whitaker BOROUGH, Petitioner,

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1996.

Decided March 19, 1997.

Reargument Denied May 2, 1997.

254 ■

Donald C. Fetzko, West Mifflin, for petitioner.

John B. Neurohr, Harrisburg, for respondent.

Before DOYLE and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Whitaker Borough (Whitaker) petitions for review of an order of the Pennsylvania Labor Relations Board (Board) that dismissed Whitaker's exceptions and made absolute and final the Nisi Order of Certification which certified Teamsters Local Union No. 205 (Teamsters) as the exclusive representative of a bargaining unit which consists of twelve officers who are members of Whitaker's police force.[1]

Collective bargaining by policemen or firemen employed by the Commonwealth or a subdivision thereof is governed by "Act 111," Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1—217.10. Section 1 of Act 111 governs the right to bargain and provides as follows:

> Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, *through labor organizations or other representatives designated by fifty percent or more of such policemen or firemen,* have the right to bargain collectively with their public employers concerning the terms and condi-

tions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act. (Emphasis ours).

43 P.S. § 217.1.

The only issue before us[2] is whether or not a labor organization or other representative, in order to be certified as the exclusive agent for collective bargaining purposes, under Section 1 of Act 111, is required to be designated by fifty-percent (50%) or more of the total members of the bargaining unit or by fifty-percent (50%) or more of the members who actually vote in the election.

The undisputed facts are that on August 29, 1995, the Teamsters filed a "petition for representation" requesting the Board to conduct an investigation concerning the representation of the twelve officers under Act 111. *See* Section 7(c) the Pennsylvania Labor Relations Act[3] (PLRA) and the Board's regulations, 34 Pa.Code §§ 91.1—95.112. At a telephone prehearing conference held on September 20, 1995, the parties agreed to enter into a memorandum of agreement stipulating to the unit composition, the site of the election, the position on the ballots, the eligibility list and other matters pertaining to the conduct of the election. On October 3, 1995, the Board issued an order and notice of election directing that an election by secret ballot be conducted on October 20, 1995; said election was then conducted by an election officer assigned by the Board. The returns of election indicated that of the twelve officers eligible to vote, only four did so, all four voting for representation by the Teamsters. On October 31, 1995, the Board issued a Nisi Order of Certification certifying the Teamsters as the exclusive representative of all the officers in the bargaining unit.

*See Harbaugh v. Pennsylvania Labor Relations Board,* 107 Pa.Cmwlth. 406, 528 A.2d 1024 (1987).

---

1. The bargaining unit excluded the Chief of Police and consisted of full-time and regular part-time officers.

2. Our scope of review is limited to determining whether there has been a constitutional violation or an error of law, and whether the Board's findings were supported by substantial evidence.

3. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. § 211.7(c).

On November 13, 1995, Whitaker filed exceptions asserting that the election results were insufficient to certify the Teamsters as the exclusive representative of the officers since the Teamsters, although receiving fifty-percent (50%) or more of the ballots cast in the election, failed to be designated by fifty-percent (50%) or more of the members of the bargaining unit. The Board rejected Whitaker's argument on the basis that it had already addressed the issue in a previous decision, *City of Erie,* 15 PPER ¶ 15034 (Final Order, 1984), in which it interpreted Section 1 of Act 111 as authorizing certification where designation is by a majority of those participating in the election and not a majority of all employees in the bargaining unit.[4]

In *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), the Board was presented with a petition which sought to have the Board conduct an election to determine a collective bargaining representative under Act 111. The Board denied the petition on the ground that it lacked statutory jurisdiction to conduct such an election since Act 111 makes no express provision for the conduct of representation elections by the Board. In finding that the Board did have jurisdiction to conduct such elections, the Supreme Court wrote,

> [w]e are of opinion that the PLRA and Act No. 111, which are both, after all, collective bargaining statutes, are *in pari materia* within the meaning of that provision (Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932). We believe, also, that it is entirely possible, and indeed salutary, within the limits delineated below, to construe the two acts together as a single statute.... We believe that when the Legislature spoke in Act No. 111 of

'labor organizations or other representatives, designated by 50(sic) percent or more of such policemen or firemen,' it necessarily meant a labor organization designated in accordance with the provisions and procedures already established by statute and administered by the Labor Board.

470 Pa. at 555–556, 369 A.2d at 261. The Supreme Court then specifically held as follows:

> [w]e decide today *only that the Labor Board has jurisdiction under the PLRA of 1937 to conduct a representation election in a unit comprised of firemen and policemen whose collective bargaining with their public employers is governed by Act No. 111.* (Emphasis ours).

470 Pa. at 558, 369 A.2d at 263.

Act 111 makes no express provision for how representation elections are to be conducted and our cases have held that the procedures of the PLRA should govern. *See Borough of Nazareth v. Pennsylvania Labor Relations Board,* 534 Pa. 11, 626 A.2d 493 (1993); *Philadelphia Fire,* 470 Pa. 550, 369 A.2d 259 (1977); *Alcaraz v. Pennsylvania Labor Relations Board,* 678 A.2d 1234 (Pa. Cmwlth.1996); *Commonwealth v. Pennsylvania Labor Relations Board,* 64 Pa.Cmwlth. 525, 441 A.2d 470 (1982). Whitaker neither contends nor argues that the procedures of the Board for the voting for a representative in the within election were improper. Whitaker argues that Section 1 of Act 111 mandates that representation of its policemen herein can only be by 50% of more of the total number of policemen employed.

Act 111 in Section 1, in plain language,[5] gave policemen employed by a politi-

---

4. We note that decisions of the Board are not binding on this Court.

5. The Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501—1991, provides, in pertinent part, that "[w]ords and phrases shall be construed according to the rules of grammar and *according to their common and approved usage.* ..." (Emphasis added). 1 Pa.C.S. § 1903(a). Our appellate courts have consistently held that when the language of a statute is clear, the provisions must be read in accordance with their plain and ordinary meaning. *Commonwealth v. Stanley,* 498

Pa. 326, 446 A.2d 583 (1982); *Department of Transportation, Bureau of Driver Licensing v. Lear,* 151 Pa.Cmwlth. 138, 616 A.2d 185 (1992); *Commonwealth v. Johnson,* 417 Pa.Superior Ct. 636, 612 A.2d 1382 (1992). Plain words of a statute cannot be disregarded where the language is free and clear from all ambiguity. *Erie–Western Pennsylvania Port Authority v. Rugare,* 29 Pa.Cmwlth. 83, 370 A.2d 768 (1977). When the words of a statute are unambiguous, they are not to be disregarded under the pretext of pursuing the spirit of the statute. *Hill v. Divecchio,* 425 Pa.Superior Ct. 355, 625 A.2d 642 (1993), *peti-*

cal subdivision the right to bargain collectively through a labor organization designated by 50% or more of such policemen. The phrase "of such policemen" clearly refers back to the total number of policemen employed. Since the Legislature has specifically set forth the number of votes required for designation of a collective bargaining representative for policemen, the Board is required to apply that provision of Section 1 of Act 111 to the vote tally.

In *Philadelphia Fire,* the Supreme Court made it clear that the Board had jurisdiction to conduct a representation election of policemen whose collective bargaining with their public employers is governed by Act 111. There were twelve (12) police officers employed by Whitaker; collective bargaining representation under Section 1 of Act 111 required a designation by at least six (6). The Board in certifying the Teamsters who received only four (4) votes violated the provisions of Section 1 of Act 111.

Accordingly, the order of the Board dismissing Whitaker's exceptions and making absolute and final the Nisi Order of Certification is reversed.

### ORDER

AND NOW, this 19th day of March, 1997, the order of the Pennsylvania Labor Relations Board, dated February 13, 1996, dismissing the exceptions of Whitaker Borough and making absolute and final the Nisi Order of Certification, is reversed.

DOYLE, Judge, dissenting.

I respectfully dissent. In reversing the decision of the Pennsylvania Labor Relations Board (Board), I believe that the majority inappropriately failed to recognize well-settled principles of federal labor law in interpreting Act 111,[1] and I would affirm the decision of the Board.

As the majority points out, in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), our Supreme Court determined that Act 111 and the Pennsylvania Labor Relations Act[2] (PLRA) are to be interpreted *in pari materia.* Specifically, the Court stated:

> We are of opinion that the PLRA and Act No. 111, which are both, after all, collective bargaining statutes, are *in pari materia* within the meaning of [Section 1932 of the Statutory Construction Act, 1 Pa.C.S. § 1932, which provides that statutes which are *in pari materia* are to be construed together and as one statute]. We believe, also, that it is entirely possible, and indeed salutary, ... to construe the two acts together as a single statute.

470 Pa. at 555, 369 A.2d at 261.

That being so, it is significant that the applicable language of the PLRA, relating to the selection of a collective bargaining representative, is virtually identical to the corresponding provision of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–169.[3] Section 7 of the PLRA provides in relevant part:

**Representatives and elections**

> (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment. . . .

43 P.S. § 211.7. The virtually identical language of Section 9 of the NLRA is as follows:

**Representatives and elections**

> (a) Representatives designated or selected for the purposes of collective bargaining by the majority of the employees

---

*tion for allowance of appeal denied,* 538 Pa. 613, 645 A.2d 1316 (1994).

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–.10.

2. Act of June 1, 1937, P.L. 1168, *as amended,* 43 P.S. §§ 211.1–.13.

3. In the past, our Supreme Court has held that it was appropriate for the Pennsylvania Labor Relations Board to find decisions of the National Labor Relations Board (NLRB) instructive in interpreting comparable statutes of this Commonwealth. *See Pennsylvania Labor Relations Board v. Altoona Area School District,* 480 Pa. 148, 389 A.2d 553 (1978).

in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment....

29 U.S.C. § 159. Nowhere in either act, however, is the phrase "majority of the employees" explained or otherwise defined.[4]

The majority construes Section 7 of the PLRA, in conjunction with Section 1 of Act 111, as requiring that a majority of all employees **eligible** to vote must vote in favor of union representation in order for the labor organization to be certified as the collective bargaining representative by the PLRB. The majority cites no authority to support this conclusion other than the Statutory Construction Act and the plain-meaning rule enunciated therein.

Of critical importance, however, is the fact that the majority's holding is in direct conflict with the construction given the corresponding and nearly identical provision of the NLRA by **every** federal court to address the issue. *See, e.g., Pennsylvania State Education Association–NEA v. NLRB*, 79 F.3d 139, 144 (D.C.Cir.1996) ("If the union prevails in the election, *i.e.*, wins out over both competing unions and the choice of no union at all, it becomes the employees' collective bargaining representative."); *American Federation of Government Employees Local 2441 v. Federal Labor Relations Authority*, 864 F.2d 178 (D.C.Cir.1988) (relating to pub-

lic sector employees of the federal government); *NLRB v. Monark Boat Co.*, 800 F.2d 191 (8th Cir.1986) (upholding the certification of a labor organization as a collective bargaining representative where 77 of 167 employees voted in favor of union representation and 57 voted against); *NLRB v. Wolverine World Wide, Inc.*, 477 F.2d 969 (6th Cir.1973) (upholding the certification of a labor organization as a collective bargaining representative where 38 of 105 employees voted in favor of union representation and 35 voted against); *NLRB v. Singleton Packing Corp.*, 418 F.2d 275 (5th Cir.1969), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970).[5]

Furthermore, in construing a similar provision of the Railway Labor Act in *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 560, 57 S.Ct. 592, 605–606, 81 L.Ed. 789 (1937), the United States Supreme Court stated:

> Election laws providing for approval of a proposal by a specific majority of an electorate have been generally construed as requiring only the consent of the specified majority of those participating in the election. *Those who do not participate "are presumed to assent to the expressed will of the majority of those voting."*
>
> ... If, in addition to participation by a majority of a craft, a vote of the majority of those eligible is necessary for a choice, an indifferent minority could prevent the resolution of a contest, and thwart the

---

4. However, the requirements for a showing of majority representation and certification **are** clearly expressed in Pennsylvania's Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–.2301:

   **Conduct of election**
   Representation elections shall be conducted by secret ballot at such times and places selected by the [PLRB] subject to the following:
   ....
   (3) A representative may not be certified unless it receives a **majority of the valid ballots cast.**
   43 P.S. § 1101.605 (emphasis added). Although our Supreme Court has been reluctant to interpret Act 111 and PERA *in pari materia, Chirico v. Board of Supervisors for Newton Township*, 504 Pa. 71, 79 n. 8, 470 A.2d 470, 475 n. 8 (1983), as Judge Craig reasoned in *Township of Chartiers v. Pennsylvania Labor Relations Board*, 98 Pa.

   Cmwlth. 44, 510 A.2d 884 (1986), *petition for allowance of appeal denied*, 514 Pa. 620, 521 A.2d 934 (1987), the relevant provisions of Act 195 may be instructive given the circumstances presented by this case.

5. We also note that the principle of majority rule is statutorily imposed upon representation elections relating to public sector employees of the federal government as well:

   **Exclusive recognition of labor organizations**
   (a) An agency shall accord exclusive recognition to a labor organization if the organization has been selected as the representative, in a secret ballot election, by a majority of employees in an appropriate unit *who cast valid ballots in the election.*
   5 U.S.C. § 7111(a) (emphasis added); *see also American Federation of Government Employees Local 2441.*

purpose of the [Railway Labor Act], which is dependent for its operation upon the *selection of representatives*. There is the added danger that the absence of eligible voters may be due less to their indifference than to coercion by the employer.[6] (Emphasis added.) (Citations omitted.)

*See also NLRB v. Deutsch Co.*, 265 F.2d 473, 479 (9th Cir.1959) ("It has repeatedly been held under well recognized rules attending elections that those not participating in the election must be presumed to assent to the expressed will of the majority of those voting, so that such majority determines the choice."), *cert. denied*, 361 U.S. 963, 80 S.Ct. 592, 4 L.Ed.2d 544 (1960).

Thus, in the case presented here, the eight members of the bargaining unit who did not participate in the representation election should be presumed to have assented to the will of those who did. Although Act 111 provides that a collective bargaining representative shall be designated by "fifty percent or more of such policemen or firemen," 43 P.S. § 217.1, whether such a designation has been made should be determined by the results of the election held for that specific purpose-that is, fifty percent of those participating in the election.[7]

Considering that it has not been contended that the nonvoting members failed to receive timely notice of the election, the application of this presumption to the instant case is especially appropriate. On the other hand, denying certification to the bargaining unit, under these circumstances, requires the Board to presume that the officers who did not participate in the election would have voted against union representation, a presumption which is not supported by Pennsylvania or federal case law, or by the record before this Court.

In *NLRB v. Standard Lime & Stone Co.*, 149 F.2d 435 (4th Cir.), *cert. denied*, 326 U.S. 723, 66 S.Ct. 28, 90 L.Ed. 429 (1945), the United States Court of Appeals for the Fourth Circuit articulated the underlying rationale of the principle that the will of the **majority of those voting** governs in a representation election:

Although there is no decision of the Supreme Court holding that a majority of the votes cast in an election is sufficient for the choice of a bargaining representative under the [NLRA], this is the holding of the [NLRB] and all of the Circuit Courts of Appeal which have had occasion to pass upon the question.... **There are no contrary decisions.**

. . . .

There is every reason to apply the sensible political rule to elections of this sort, and no reason that we can see to the contrary. The elections are held, not for the purpose of choosing representatives for the employees in their private and personal capacities, but for the purposes of collective bargaining, i.e., for the purpose of setting up industrial democracy by choosing some one to represent the interest of the employees in determining the rate of wages, hours of work, living conditions, etc., for the plant.... This being true, it would be absurd to hold that collective bargaining is defeated because a majority of employees fail to participate in an election of representatives as it would be to hold that the people of a municipality are without officers to represent them because a majority of the qualified voters do not participate in an election held to choose such officers. In the one case, as in the other, the representative is being chosen to

---

**6.** The relevant provision of the Railway Labor Act provided "The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purpose of the [Railway Labor Act]." *Virginian Railway*, 300 U.S. at 560, 57 S.Ct. at 605.

**7.** By adopting the majority's holding—that Section 1 of Act 111 requires that representation of police and fire personnel be achieved only by an affirmative vote of 50% or more of the total number of members in the unit **(thus counting all non-voting members in the negative)**—the results could be absurd. Consider, for example, that if 76 members of a 150–member bargaining unit participated in a representation election, and, of the 76 participating, 74 voted in favor of union representation and 2 voted against, the union would remain uncertified despite the fact that an overwhelming number of those who voted favored representation. Such a pernicious result would undermine the very purpose of the Act.

represent a constituency because it is in the public interest that the constituency be represented; and all that should be necessary is that the election be properly advertised and fairly held and that the settled principle of majority rule be applied to the result. (Emphasis added.) (Citations omitted.)

*Id.* at 437–39.

The majority purports to reach its holding, to the contrary of this logical analysis, by virtue of applying the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, to Act 111, and by supposedly ascertaining the "plain meaning" of the statute. However, I would strongly advocate that the meaning of the statute is not "plain" and, to the contrary, I see no reason to interpret the language of Act 111 ("fifty percent or more of such employees") differently from the comparable language of the PLRA and NLRA ("the majority of the employees in a unit"). It simply does not seem logical to conclude that the "plain meaning" of the phrase from Act 111 refers to a majority of total **eligible** voters, when almost identical language in the PLRA and NLRA refers to a majority of employees who actually voted. Moreover, I certainly do not believe that the "plain meaning" derived by the majority is so clearly supported by the language of Act 111 to justify ignoring the firmly-established principles of federal labor law when interpreting a virtually identical statutory scheme of this Commonwealth.[8]

Finally, this Court has repeatedly held that we should defer to the expertise of the Board in resolving such matters, and we should not, as the majority does in this case, lightly substitute our judgment for that of the Board. *Philadelphia Correctional Offi-* cers Association v. Pennsylvania Labor Relations Board, 667 A.2d 459 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied,* 544 Pa. 639, 675 A.2d 1254 (1996).

Accordingly, I would affirm.

---

8. The majority opinion reaches the conclusion that the "phrase 'of such policemen' clearly refers back to the **total number** of policemen employed." Slip op. at 6 (emphasis added). However, Section 1 of the Act makes no mention of the "total number" of employees in the bargaining unit, and the term "of such policemen or firemen," in my view, simply refers to the type of personnel in the unit. This view is supported by this Court's interpretation of the word "such" in *Murphy v. Township of Abington,* 88 Pa.Cmwlth. 491, 490 A.2d 483 (1985), wherein we stated that "the adjective 'such' [is defined as] 'having a quality already or just specified' or as being 'of the sort previously indicated.'" *Id.,* 490 A.2d at 485 (citing *Webster's Third New International Dictionary* 2283 (1966)). We further stated that "it is our view that the legislature has used 'such' ... as a synonym for the word 'the.'" *Id.* In this case, therefore, the phrase "of **such** policemen or firemen" should be construed merely to mean "**the** policemen or firemen," which underscores my view that this is simply a reference to the type of employees comprising the bargaining unit. Certainly, at best, the word "such" as used in Section 1 of the Act is susceptible to different interpretations and is not so clear that reference to other similar statutes is unwarranted.