# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lower Swatara Township, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania Labor Relations Board, | : | No. 1276 C.D. 2018 |
| Respondent | : | Argued: April 9, 2019 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ANNE E. COVEY, Judge (P.)
                   HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY
JUDGE COVEY                                                    FILED:  May 2, 2019

Lower Swatara Township (Township) petitions this Court for review of the Pennsylvania Labor Relations Board's (Board) August 21, 2018 order dismissing the Township's exceptions and making absolute and final the Hearing Examiner's April 26, 2018 Order Directing Submission of Eligibility List (ODSEL) and the June 4, 2018 Nisi Order of Certification (NOC).  The sole issue before this Court is whether the Board erred by concluding that Section 604 of the Pennsylvania Public Employe Relations Act (PERA)[1] did not prohibit a union representing the Township's public works employees from also representing all full-time and regular part-time Act 111[2] Township police officers.[3]  After review, we affirm.

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.604.

[2] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1-217.10 is commonly referred to as Act 111.  "Act 111 gives police and fire personnel, who are not permitted to strike, the right to bargain collectively with their public employers."  *Fraternal Order of Police Fort Pitt Lodge No. 1 v. City of Pittsburgh*, 203 A.3d 965, ___ n.3 (Pa. 2019), slip op. at 3 n.3.  *See also City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1*, 111 A.3d 794 (Pa. Cmwlth. 2015).

[3] Appellant raises three issues:

On January 30, 2018, Teamsters Local Union No. 776 (Local 776), which is affiliated with the International Brotherhood of Teamsters (Teamsters), filed a Petition for Representation with the Board pursuant to the Pennsylvania Labor Relations Act[4] (PLRA) and Act 111, seeking clarification of the union representation of all full-time and regular part-time police officers the Township employed. On February 12, 2018, the Board's Secretary issued an Order and Notice of Hearing (ONH).

Based on the parties' stipulations of fact, the Township argued before the Hearing Examiner that since the petitioned-for police officers would act as Township security guards within the meaning of Section 604(3) of PERA,[5] the Teamsters could not represent those police officers since the Teamsters also represent Township employees who are not security guards.

---

1) Whether the 'guard exception' to [PERA, 43 P.S. § 1101.604(3) (Guard Exception),] applies to govern the employment relationship between [the Township] and its public works employees?

. . .

2) Whether police officers employed by [the Township] are considered 'guards' under the definition of that term as defined by [PERA]?

. . .

3) Whether the [Guard Exception] prohibits [the Township's] police officers from being represented by the same union as its public works employees?

Township Br. at 2. These issues are subsumed in the above-stated issue which the Court will address.

[4] Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1-211.13.

[5] Section 604(3) of PERA prohibits the Board from permitting individuals employed as guards (whose duties involve protecting a public employer's property and persons thereon) to be included in a unit with other public employees. *See* 43 P.S. § 1101.604(3).

On April 26, 2018, the Hearing Examiner issued the ODSEL, therein holding that Act 111 police officers are not security guards under PERA and, thus, may be represented by an employee organization that represents non-security guard employees. Specifically, the Hearing Examiner explained:

> Although the Township asserts that this case presents an issue of first impression for the Board, (Township's Post-hearing Brief at 8) (stating that 'this case poses a new, novel and unanswered question'), the Board long ago rejected the position advanced by the Township here. In *Union Township*, 25 PPER ¶ 25198 (Final Order, 1994), the employer filed three petitions (a unit clarification, an amendment of certification and a decertification) requesting that the Teamsters local be prohibited from representing the police employes of the township as a result of its certification to represent non-uniformed, non-professional employes of the employer under PERA. In that case, the employer argued that, the police officers were guards and that[,] under Section 604(3) of PERA[,] they must be included in a security guard[-]only bargaining unit and that their bargaining representative must not be affiliated with any other organization which represents or includes members or persons outside of the security guard classification.

Reproduced Record (R.R.) at 46a.

> The Hearing Examiner reasoned:

> The parties in this case agree that the police officers in the proposed bargaining unit currently represented by the [incumbent union, Lower Swatara Township Police Civic Association,] are sworn police officers . . . who are entitled to organize under Act 111, not PERA. Consequently, those officers have a sworn duty to protect, not only the Township's property and persons thereon, but other property within the Township and persons therein. Pursuant to *Union Township*, the employes' Act 111 status as sworn officers . . . , employed by a political subdivision, as opposed to an authority, removes them from any application of the guard exclusion under PERA. Moreover, under [*Commonwealth v. Pennsylvania Labor Relations Board*, 441 A.2d 470 (Pa. Cmwlth. 1982), *aff'd in relevant*

3

*part*, . . . 463 A.2d 409 ([Pa.] 1983) (]*Capitol Police*[)], . . . by virtue of their status as Act 111 police officers, the officers are outside of the guard classification, and a guard union is prohibited from representing them. *Id.* (holding that the guard classification under PERA and the Act 111 status of police officers are mutually exclusive). Furthermore, uniformed police officers could not violate their sworn duty to protect citizens and property simply because non–uniformed Township employes, represented by Local 776, were picketing or striking, in the event that Local 776 becomes the certified bargaining representative of the officers.

Similarly, officers will not disobey orders or their sworn duty, as peace officers, to protect persons and property simply because Article XIX, Section 7(b)(7) [of the collective bargaining agreement] allows sanctions against a Teamster member for crossing a picket line authorized by any local affiliated with the International Brotherhood of Teamsters. The threat of discipline from the Chief and the Township has more influence on the officers' loyalty (for violating their duty or their orders) than the ethereal possibility of sanction from the International. The special status of duty-bound and sworn Act 111 police officers, under law, renders the guard exclusion inapplicable. *Capitol Police*, [sic]; *Union T*[*wp.*], [sic]. Although the Township maintains that 'it is also entitled to the protections of Section 604(3) [of PERA] by virtue of its employment of public works employees, . . . the Township in fact enjoys and has the loyal, premium, duty-bound protections of its sworn police officers, who will protect persons and property without bias, judgment or influence from the Teamsters or any other person or organization.

R.R. at 48a (citation and footnote omitted).

On May 10, 2018, the Board received the Eligibility List and, on May 15, 2018, issued an Order and Notice of Election directing a secret ballot election on May 24, 2018 to ascertain the exclusive representative of all the Township's full-time and regular part-time police officers (excluding the Police Chief and other managerial employees). On June 4, 2018, the Board issued the NOC finding that 50% or more of the valid votes cast designated the Teamsters as the exclusive representative for

4

collective bargaining purposes. The NOC certified the Teamsters as the exclusive representative of all the Township's full-time and regular part-time police officers[6] for collective bargaining purposes under Act 111.

On June 25, 2018, the Township filed timely exceptions to the NOC with the Board. The Teamsters filed a response to the exceptions on July 13, 2018. On August 21, 2018, the Board issued its Final Order, holding that the Hearing Examiner's legal conclusions on the challenged issues were not erroneous. Thus, the Board dismissed the Township's exceptions and made the April 26, 2018 ODSEL and the June 4, 2018 NOC absolute and final. The Township appealed to this Court.[7]

Initially, this Court notes that in the Township's exceptions to the Board and Petition for Review to this Court, the Township contended that the Board erred in including Act 111 officers **in the same unit** as the Township's non-guard employees certified under PERA. The Board correctly points out that

> the Board did not certify the Act 111 police officers in the same unit as the public works employes certified under PERA. The police officers are certified in their own homogenous unit under Act 111, at PF-R-18-13-E, and the public works employes were certified in a bargaining unit of nonprofessional employes under PERA at Case No. PERA-R-17-280-E.

Board Br. at 20 n.11. Curiously, the Township admits in its brief to this Court: "[I]t is important to note that **the Township did not (*and does not*) object to the police officers organizing into a union, just that the union representing the police officers should not be the <u>same</u> unit as the non-uniformed union.**" Township Br.

---

[6] The NOC excluded the police chief and other managerial employees.

[7] "Generally, 'when reviewing a decision of the Board, our review is limited to determining whether there has been a violation of constitutional rights, an error of law, procedural irregularity, or whether the findings of the agency are supported by substantial evidence.'" *Dailey v. Pa. Labor Relations Bd.*, 148 A.3d 920, 926 (Pa. Cmwlth. 2016) (quoting *Borough of Ellwood City v. Pa. Labor Relations Bd.*, 998 A.2d 589, 594 (Pa. 2010)).

at 4 n.6 (bold and italic emphasis added). Even more perplexing, the Township acknowledges in its Reply Brief to this Court that the "the public works employees **are <u>not</u> *currently* in the same unit as the police officers**."[8] Township Reply Br. at 14 n.13 (bold and underline emphasis added). Notwithstanding those acknowledgements, the Township still argues that this Court should reverse the Board's decision. Accordingly, we review the Board's decision.

Section 604 of PERA[9] provides in relevant part:

> The [B]oard shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the [B]oard shall:
>
> (1) Take into consideration but shall not be limited to the following:

---

[8] The Board further notes in its brief to this Court that the issue the Township presented in its exceptions to the Board and in its Petition for Review with this Court differs from the issue the Township argues in its brief to this Court - that the Teamsters may not represent both non-guard public works employees under PERA and Act 111 police officers. Accordingly, the Board contends that the Township waived the issue now before the Court. *See* Board Br. at 20 n.11. In response, the Township states:

> Pursuant to Pennsylvania Rule of Appellate Procedure 1513(a), '[t]he statement of objections [is] deemed to include every subsidiary question fairly comprised therein.' The purpose of the 'guard exception' is to prohibit the affiliation of units of guards with units of non-guards, and its prohibition on inclusion of guards in the same unit as non-guards is another way of stating this prohibition. Clearly, the Township's argument on appeal encompassed the question of whether Local 776 could represent both police officers and public works employes in general; if it did not, there would be no reason to appeal because the public works employees are not *currently* in the same unit as the police officers.

Township Reply Br. at 14 n.13. This Court agrees with the Township that the question of whether the Teamsters may represent both non-guard public works employees and Act 111 police officers is fairly comprised within the question raised in the Township's Petition for Review.

[9] The parties do not dispute that PERA governs the relationship between the Township and its pubic works employees. Nor do the parties dispute that "employees covered by [Act 111] are not in any respect covered by [PERA.]" *Phila. Fire Officers Ass'n v. Pa. Labor Relations Bd.*, 369 A.2d 259, 262 (Pa. 1977).

6

(i) public employes must have an identifiable community of interest, and

(ii) the effects of over-fragmentization.

(2) Not decide that any unit is appropriate if such unit includes both professional and nonprofessional employes, unless a majority of such professional employes vote for inclusion in such unit.

(3) Not permit guards at prisons and mental hospitals, employes directly involved with and necessary to the functioning of the courts of this Commonwealth, or **any individual employed as a guard to enforce against employes and other persons**, rules to protect property of the employer or to protect the safety of persons on the employer's premises **to be included in any unit with** *other* **public employes**, each may form separate homogenous **employe** organizations with the proviso that **organizations of the latter designated employe group may not be affiliated with any other organization representing or including as members, persons outside of the organization's classification.**

43 P.S. § 1101.604 (bold and italic emphasis added). This Court has explained:

The purpose of the requirement [in Section 604 of PERA] that guards be separated from other employees in collective bargaining is to ensure that during strikes or labor unrest, 'the employer would have 'guards' who could enforce rules for the protection of property and safety of persons without being confronted with a division of loyalty between the employer and dissatisfied fellow union members.'

*Washington Cty. v. Pa. Labor Relations Bd.*, 613 A.2d 670, 673 (Pa. Cmwlth. 1992) (quoting *Twp. of Falls v. Pa. Labor Relations Bd.*, 322 A.2d 412, 414 (Pa. Cmwlth. 1974)). At issue in the instant matter is the General Assembly's intent when it referenced "any individual employed as a guard" in Section 604 of PERA, and whether Act 111 police officers are included therein.

The Township argues that "[b]ecause PERA governs the relationship between the Township and its public works employees, the Township is entitled to

7

the protections of the 'guard exception'[10] to PERA." Township Br. at 13. Specifically, with respect to the meaning and interpretation of Section 604 of PERA, the Township asserts:

> The 'guards' themselves need not be 'public employes' as defined by PERA. Indeed, the statute's reference to a mere '***individual employed as a guard***' read in conjunction and juxtaposed with its reference to '***other public employes***' indicates the intent of the General Assembly to apply this Section <u>in the presence</u> to a public-employer, public-employee relationship, regardless of whether the 'guards' are considered 'public employes' under PERA. 43 P.S. § 1101.604(3) (emphas[i]s added). The General Assembly refers to the 'individual[s] employed as guard[s]' as 'public employes' but specifically characterizes the individuals to whom the statute is meant to protect as 'public employes.' *Id*. In short, it is not the 'guard' that must be the public employe and covered by the statute; it is the 'other public employes' that are the subject of this Section. *See id*.; *see also* 1 Pa.C.S.[] § 1903(b) ('General words shall be construed to take their meanings and be restricted by preceding particular words.').
>
> Thus, under the 'guard exception,' the Board is prohibited from allowing the possibility that 'guards,' however defined, may be included in the same bargaining unit with the Township's public works employees. The fact that the Township's police officers are not 'public employes' to whom this Section applies within the meaning of PERA is immaterial.

Township Br. at 14 (bold, italic and underline emphasis in original).

The Township acknowledges that Pennsylvania courts and the Board have previously "refuse[d] to classify police officer employees as 'guards' under the 'guard exception' to PERA[,]" but attributes such to "the fact that police officers,

---

[10] The Township refers to Section 604(3) of PERA's prohibition against "any individual employed as a guard . . . enforc[ing] against employes and other persons, rules to protect property of the employer or to protect the safety of persons on the employer's premises . . . [from] be[ing] included in any unit with other public employes," 43 P.S. § 1101.604(3), as the "guard exception."

8

who are covered by Act 111, are also not covered by PERA because Act 111 and PERA are not to be read *in pari materia*." Township Br. at 15; *see, e.g., Chirico v. Bd. of Supervisors*, 470 A.2d 470 (Pa. 1983) (the only method for settling grievance disputes allowable within the framework of Act 111 is arbitration, and PERA may not fill the vacuum); *Capitol Police* (holding that Capitol Police Officers are police officers within the meaning of Act 111, rather than guards subject to PERA); *Phila. Fire Officers v. Pa. Labor Relations Bd.*, 369 A.2d 259, 262-63 (Pa. 1977) (holding that "employees covered by Act No. 111 are not in any respect covered by . . . PERA[,]" but the Board "has jurisdiction under the [PLRA] to conduct a representation election in a unit comprised of firemen and policemen whose collective bargaining with their public employers is governed by Act No. 111."); *Union Township*. The Township admits that "[c]**ourts have continuously rejected the argument that Act 111 should be read *in pari materia* with PERA to allow police officers to be covered by both of the statutes - *i.e.*, to be both a 'police officer' and a 'guard' at the same time.**" Township Br. at 16 (emphasis added). Further, "the Township does not dispute that . . . its police officer employees are covered by Act 111; . . . Act 111 and PERA are not to be read *in pari materia*; [and] that . . . its police officers are not covered by both Act 111 and PERA." Township Br. at 16 (footnote omitted). Notwithstanding, the Township asserts that in the instant matter, this Court should find that the police officers are "guards" under PERA because such a finding "does not mean that the police officers are *covered* by PERA, and therefore does not require the Court to read PERA and Act 111 *in pari materia*."[11] Township Br. at 16 (emphasis in original).

---

[11] The Township's argument that a holding that Section 604(3) of PERA's reference to "individual[s] employed as [] guard[s]" includes police officers "does not mean that [they] are *covered* by PERA," Township Br. at 16, ignores the reality that such a ruling would permit PERA's provisions to intrude upon and impair the police officers' Act 111 "right to bargain collectively with their public employers." *FOP Fort Pitt Lodge No. 1*, 203 A.3d at ___ n.3, slip op. at 3 n.3.

9

The Board responds that it previously addressed this issue in its *Union Township* decision. Therein, the Board explained:

> [T]he [t]ownship cites Section 604(3) of PERA which provides that security guard organizations under PERA ' . . . may not be affiliated with any other organization representing or including as members, persons outside of the organization's classification.' 43 P.S. § 1101.604(3). The [t]ownship argues that since the police employes may or have been called upon to enforce rules to protect the [t]ownship's premises against striking [t]ownship employes, that Section 604(3) [of PERA's] prohibition against the same labor organization representing both groups of employes applies.

> The [t]ownship's exceptions are without merit. . . . [T]he [t]ownship's argument ignores the fact that the police employes certified under Act 111 are in no way governed by the provisions of PERA. Section 301(2) of PERA specifically excludes employes covered by Act 111 from its definition of 'public employe.' The [t]ownship's contention that Act 111 and PERA are to be read *in pari materia* is erroneous and has been specifically rejected by the Pennsylvania Supreme Court in *Philadelphia Fire Officers* . . . . *See also* [*Capitol Police*]. In *Philadelphia Fire Officers*, the Pennsylvania Supreme Court stated that 'employes covered by Act No. 111 are not in any respect covered by PERA . . .' . . . 369 A.2d at 262. Accordingly, the [t]ownship's attempt to deny the [u]nion's right to represent both the police employes and the nonprofessional employes of the [t]ownship at the same time based upon the police employes status as security guards under PERA must fail.

> This result is further buttressed by the Commonwealth Court's decision in *Capitol Police*. *Capitol Police* involved an attempt by the Fraternal Order of Police [(FOP)] to represent under Act 111 a unit of capitol policemen who had previously been certified in a separate security guard unit under PERA and were represented by the United Plant Guard Workers of America (UPGWA), an exclusive security guard employe organization. In its analysis of whether the employes were police under Act 111 or security guards under PERA, the Commonwealth Court noted that in

10

the event the employes were covered by Act 111, the UPGWA would be legally prohibited from representing them because police employes under Act 111 would be persons outside of the security guard classification under Section 604(3) of PERA. *Capitol Police*, . . . 441 A.2d at 476. The Commonwealth Court recognized that the security guard classification under PERA and police status under Act 111 were mutually exclusive. So too here, because the employes are admittedly covered by Act 111, they are outside the security guard classification under PERA and Section 604(3) of PERA can in no way prohibit the [u]nion from representing both the police employes under Act 111 and the nonprofessional employes under PERA. The legislature could have easily provided for the prohibition argued by the [t]ownship in enacting PERA in 1970, but instead made it clear that police employes were in no way covered by the provisions of PERA.

*Union Twp.*, 25 PPER ¶ 25198 at 511.

Again in 1995, the Board held that police officers are outside the security guard classification. In *Temple University*, 26 PPER ¶ 26161 (1995), the Board affirmed a hearing examiner's dismissal of a union's petition to represent a unit of Temple University security guards because the union was affiliated with the FOP and, accordingly, was prohibited from representing a unit of security guards pursuant to Section 604(3) of PERA. The Board explained:

The hearing examiner was also correct in concluding that employes covered by Act 111 are 'persons' outside of the security guard classification so that organizations that represent police officers under Act 111 cannot simultaneously represent security guards under PERA. [The union] confuses the fact that the FOP is a police organization and the employes petitioned for in this case are arguably police with compliance with the statutory proviso that requires that security guard organizations not represent or include as members persons outside of that classification. Under Section 604(3) of PERA, the organization, in order to represent security guards must be [a] homogeneous organization consisting of security guards that is not affiliated with any other organization that represents or includes as members anyone other than security guards.

11

> The FOP, which represents police officers under Act 111, is an organization which represents persons outside of the security guard classification and is accordingly prohibited under Section 604(3) of PERA from representing a unit of security guards.

*Temple Univ.*, 26 PPER ¶ 26161 at 371-72; s*ee also Phila. Hous. Auth.*, 10 PPER ¶ 10289 (1979). The relevant statutory provisions and the cited case law supports the Board's position.

Importantly, Section 1 of Act 111 permits police officers to collectively bargain "through labor organizations or other representatives **designated by** fifty percent or more of **such policemen**[.]" 43 P.S. § 217.1 (emphasis added). The Township, in effect, seeks to have this Court rewrite Act 111 to prohibit police officers from designating bargaining representatives that conflict with the Township's interpretation of Section 604(3) of PERA. This, the Court may not do.[12] Rather, this Court concludes that the Board's interpretation properly respects police officers' Act 111 rights to collectively bargain without PERA's intrusion therein and honors *stare decisis* that PERA and Act 111 are not to be read *in pari materia*. Accordingly, this Court finds the Township's argument without merit.

The Board acknowledges the Township's concerns about police officers' possible conflicted loyalties while performing guard duties during a labor dispute, but asserts that such concerns have been "subsumed within the statutory requirements, and Board certification, of separate homogenous bargaining units of police officers under Act 111." Board Br. at 18.[13]

---

[12] "The Court may not rewrite a statute[.]" *Bender v. Pa. Ins. Dep't*, 893 A.2d 161, 164 (Pa. Cmwlth. 2006). "It is not within the jurisdiction of this Court to rule on the wisdom of legislative enactments. The judiciary may not sit as a super legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceeds along suspect lines." *Mercurio v. Allegheny Cty. Redev. Auth.*, 839 A.2d 1196, 1203 (Pa. Cmwlth. 2003) (citations and quotation marks omitted).

[13] The Board references *Philadelphia Housing*, wherein the Board reasoned:

This Court has explained:

> The law is well established that 'the Board's interpretation of its governing statute is to be given controlling weight unless clearly erroneous.' *City of Erie v. Pa. Labor Relations Bd.*, . . . 32 A.3d 625, 631 ([Pa.] 2011). 'This [C]ourt will not lightly substitute its judgment for that of the [Board]; the [Board] possesses administrative expertise in the area of public employee labor relations and should be shown deference.' *Phila. Corr. Officers Ass'n v. Pa. Labor Relations Bd.*, 667 A.2d 459, 461 n.2 (Pa. Cmwlth. 1995).

---

> Section 604(3) of . . . PERA requires that employes who are employed as guards for the purpose of enforcing rules to protect the property of their employer or to protect the safety of persons on the employer's premises must be included in a separate homogeneous bargaining unit with the proviso that the employe organization which represents such 'guards' may not be affiliated with any other organization representing or including as members persons who are not 'guards.' The FOP has been certified by this Board on many occasions as a bargaining representative for 'persons outside' the guard classification. We believe that the mandate of Section 604(3) of PERA serves to prohibit labor organizations such as the FOP from representing both guards and nonguards. Insofar as the FOP does represent policemen throughout this state, it is prohibited from representing 'guards' and accordingly this [p]etition must be dismissed.
>
> In reaching this result, we are mindful that the [FOP] has traditionally represented only police and that policemen are, *inter alia*, involved in protecting their employer's property and the safety of persons on their employer's premises. To that extent, it might be argued that there does not exist sufficient distinction between a guard and a policeman to require dismissal of this [p]etition. However, the separate legislative coverage of police and guard employes and separate dispute resolution procedures available to them requires guards and policemen to be placed in separate units for bargaining. The fact that guards and policemen would bargain in separate units, would, of itself, engender the potential conflict of interest addressed by the proviso in PERA.

*Phila. Hous. Auth.*, 10 PPER ¶ 10289 at 434.

*Kaolin Workers Union v. Pa. Labor Relations Bd.*, 140 A.3d 748, 753 (Pa. Cmwlth. 2016). Based on the aforementioned analysis, this Court discerns no error in the Board's interpretation of Section 604(3) of PERA and, because it is not clearly erroneous, it is entitled to controlling weight.

Further, even without the Board's *Union Township* decision, this Court would reach the same result. The law is well-established that "in the absence of a demonstrated constitutional infirmity, courts generally **must apply plain terms of statutes as written**; they are to confine efforts to effectuate legislative intent – above and beyond the prescriptions of written laws – to ambiguous provisions[.]" *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1067 (Pa. 2013) (emphasis added). "The legislature may create its own dictionary, and its definitions may be different from ordinary usage. **When it does define the words used in a statute**, **the courts** need not refer to the technical meaning and deviation of those words as given in dictionaries, but **must accept the statutory definitions**." *Commonwealth v. Massini*, 188 A.2d 816, 817 (Pa. Super. 1963) (emphasis added).

In interpreting Section 604(3) of PERA, this Court must consider the meaning of the terms used therein. Section 301(2) of PERA defines "public employe" or "employe" as

> any individual employed by a public employer but **shall not include** elected officials, appointees of the Governor with the advice and consent of the Senate as required by law, management level employes, confidential employes, clergymen or other persons in a religious profession, employes or personnel at church offices or facilities when utilized primarily for religious purposes and **those employes covered under** [**Act 111**].

43 P.S. § 1101.301(2) (emphasis added).

Although PERA defines the term "employe," it does not define the word "other" as used in Section 604(3). Section 1903(a) of the Statutory Construction Act

14

of 1972 provides that when words in a statute are undefined, they must be accorded "their common and approved usage[.]" 1 Pa.C.S. § 1903(a). "Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling." *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006). Merriam Webster's Collegiate Dictionary 878 (11th ed. 2004) defines "other," in pertinent part, as "being the one or ones distinct from that or those first mentioned or implied." Thus, Section 604 of PERA's language prohibiting "any individual employed as a guard to . . . be included in any unit with **other** public employes," distinguishes those "**other** public employes" from the public employees first mentioned – the individuals employed as guards. 43 P.S. § 1101.604(3) (bold and underline emphasis added). The General Assembly's use of the language "***other*** employes" to <u>differentiate</u> guards from **other** public **employees**, contemplates that the guards referenced therein and to which the section applies are also **public "employes" as defined in PERA**. *Id.* (bold and italic emphasis added). PERA's definition is clear; the term "employe" specifically excludes police officers "covered under [Act 111.]" 43 P.S. § 1101.301(2). Thus, **the General Assembly's reference in Section 604 of PERA to "individuals employed as guards" was intended to apply only to individuals who are "employes" as defined in Section 301(2) of PERA, and not to Act 111's police officers**.

The Township emphasizes that the Hearing Examiner recognized that, in the event of a strike or labor unrest, the Township would use its police to protect Township property, and urges that permitting the same Township's police officers to be represented by the Teamsters would thwart the legislative purpose behind the guard exception. Regardless, our Supreme Court has held that PERA and Act 111 are not to be read *in pari materia*, and Section 604(3) of PERA is unambiguous. This Court must "apply plain terms of statutes as written . . . [and] confine [its] efforts to

15

effectuate legislative intent – above and beyond the prescriptions of written laws –  to ambiguous provisions." *Herd Chiropractic Clinic*, 64 A.3d at 1067.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Swatara Township, : 
                    Petitioner : 
                            : 
              v. : 
                            : 
Pennsylvania Labor Relations Board, :    No. 1276 C.D. 2018
                Respondent : 

## O R D E R

AND NOW, this 2nd day of May, 2019, the Pennsylvania Labor Relations Board's August 21, 2018 order is affirmed.

_____

ANNE E. COVEY, Judge